No. 84–5060.   WRIGHT *v.* NEW JERSEY.   Appeal from Sup.
Ct. N. J. dismissed for want of substantial federal question.

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins,
dissenting.

The appellant Charles Wright was convicted of possessing an
"exacto" knife.   Under New Jersey law, possession of this sort of
object is entirely legal in most circumstances; possession becomes
unlawful only "under circumstances *not manifestly appropriate* for
such lawful uses as it may have."   N. J. Stat. Ann. § 2C:39–5d
(West 1982) (emphasis added).[1]   As construed by the state courts,
although this statute requires proof that the defendant "know-
ingly" possessed the object in question, there is no requirement
that he have done so with any unlawful purpose.

The Supreme Court of New Jersey affirmed the constitutional-
ity of § 2C:39–5d in this and a companion case, see *State* v. *Wright*,
96 N. J. 170, 475 A. 2d 38 (1984); *State* v. *Lee*, 96 N. J. 156, 475

[1] This section provides in its entirety: "Any person who knowingly has in his
possession any other weapon under circumstances not manifestly appropriate
for such lawful uses as it may have is guilty of a crime of the fourth degree."

New Jersey Stat. Ann. § 2C:39–1r (West 1982) in turn defines "weapon" as
"anything readily capable of lethal use or of inflicting serious bodily injury.
The term includes, but is not limited to, all (1) firearms, even though not
loaded or lacking a clip or other component to render them immediately oper-
able; (2) components which can be readily assembled into a weapon; and (3)
gravity knives, switchblade knives, daggers, dirks, stilettos, or other danger-
ous knives, billies, blackjacks, bludgeons, metal knuckles, sandclubs, sling-
shots, cestus or similar leather bands studded with metal filings or razor
blades imbedded in wood; and any weapon or other device which projects,
releases, or emits tear gas or any other substance intended to produce
temporary physical discomfort or permanent injury through being vaporized
or otherwise dispensed in the air."

A. 2d 31 (1984), with one justice arguing in dissent that the operative standard "not manifestly appropriate" is "so lacking in any precise meaning as to defy definition," *State* v. *Lee, supra,* at 168, 475 A. 2d, at 37 (Clifford, J., dissenting). I believe this appeal presents the substantial question whether § 2C:39–5d is impermissibly vague in violation of the Due Process Clause of the Fourteenth Amendment. Accordingly, I respectfully dissent from the Court's dismissal of the appeal for want of a substantial federal question.

I

Wright, the subject of several outstanding arrest warrants, was apprehended while conversing with a friend on a street corner in Teaneck, New Jersey. The arresting officers searched Wright at police headquarters, where they found the exacto knife in question concealed inside one of his socks. The instant prosecution for violation of § 2C:39–5d followed.

At trial, Wright contended that he had not intended to use the knife against person or property and that the statute is unconstitutionally vague. The trial court rejected these arguments. With respect to the question of Wright's intent, the court instructed the jury that it was "not necessary that the State prove that [the] defendant possessed the weapon with a purpose to use it unlawfully against the person or property of another." Juris. Statement 4. As for the definition of the "not manifestly appropriate" standard, which Wright contended was meaningless, the court instructed: "If you . . . find that the circumstances under which the weapon was possessed *could not be easily understood or recognized as being appropriate* to a lawful use of the instrument in question here then possession of the weapon . . . is prohibited." *State* v. *Wright, supra,* at 172, 475 A. 2d, at 39 (emphasis added). Wright was convicted as charged and sentenced to 200 days in the Bergen County jail.

The Superior Court of New Jersey, Appellate Division, reversed Wright's conviction, reasoning that the legislature could not have intended to impose criminal sanctions on one whose conduct merely "was not 'easily understood or recognized' from the circumstances." 187 N. J. Super. 160, 164, 453 A. 2d 1352, 1354 (1982). The Supreme Court of New Jersey reversed the Appellate Division, however, and concluded that the trial court's interpretation properly reflected the legislature's intent in enacting

§ 2C:39–5d.   96 N. J., at 173, 475 A. 2d, at 40.[2]   The court rejected Wright's vagueness challenge for the reasons set forth in its companion decision in *State* v. *Lee,* where it had concluded that the "not manifestly appropriate" standard carries "sufficient warning so that an ordinary person 'is apprised with a reasonable degree of certainty of that which is proscribed'" and so that law enforcement officials have sufficient notice of what conduct is prohibited to guard against arbitrary or discriminatory enforcement.   96 N. J., at 166, 475 A. 2d, at 36 (citation omitted).   This appeal pursuant to 28 U. S. C. § 1257(2) followed.

## II

The standards for evaluating whether a statute is unconstitutionally vague are well settled:

"Vague laws offend several important values.   First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.   Vague laws may trap the innocent by not providing fair warning.   Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them.   A

---

[2] In its companion decision in *State* v. *Lee,* the court summarized the legislature's purpose as follows:

"[The statute addresses] the situation in which someone who has not yet formed an intent to use an object as a weapon possesses it under circumstances in which it is likely to be so used.   The obvious intent of the Legislature was to address a serious societal problem, the threat of harm to others from the possession of objects that can be used as weapons under circumstances not manifestly appropriate for such lawful uses as those objects may have.   Some objects that may be used as weapons also have more innocent purposes.   For example, a machete can be a lethal weapon or a useful device for deep sea fishing. . . . A steak knife is appropriate at the dinner table, but sinister when concealed in a car with a BB gun. . . .

"The underlying problem is protecting citizens from the threat of harm while permitting the use of objects such as knives in a manner consistent with a free and civilized society.   The statute addresses the problem by outlawing the possession of various weapons in circumstances where they pose a likely threat of harm to others.   In striking a balance, the Legislature recognized that an otherwise innocent object can become such a threat."   96 N. J., at 161–162, 475 A. 2d, at 33–34.

vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned* v. *City of Rockford*, 408 U. S. 104, 108–109 (1972) (footnotes omitted).

As construed by the New Jersey courts, § 2C:39–5d authorizes arrest and conviction whenever an individual possesses any object capable of inflicting serious injury in circumstances "not . . . easily understood or recognized as being appropriate" by the authorities and a jury, even though the individual may have had no intent whatsoever to possess or use the object for unlawful purposes. *State* v. *Wright*, 96 N. J., at 172, 475 A. 2d, at 39. I believe there is a substantial question whether such an amorphous crime is unconstitutionally vague.

*First.* I agree with the dissent below that there is a serious question whether the "not manifestly appropriate" standard gives fair notice of the conduct that is prohibited or. is instead "so lacking in any precise meaning as to defy definition." *State* v. *Lee, supra*, at 168, 475 A. 2d, at 37 (Clifford, J., dissenting).[3] "[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." *Connally* v. *General Construction Co.*, 269 U. S. 385, 391 (1926). See also *Smith* v.

---

[3] As Judge Antell, dissenting from the judgment of the Appellate Division in *State* v. *Lee*, argued:

"If read literally, the statutory language would encompass countless situations which the Legislature could not have intended as the subject of prosecution. The workman carrying home a linoleum knife earlier used in his work; the paring knife inadvertently left on an automobile floor after being used for a lawful purpose; a stevedore's hook or a fisherman's gaff thrown into a vehicle and forgotten. A 'weapon' could include a brick, a baseball bat, a hammer, a broken bottle, a fishing knife, barbed wire, a knitting needle, a sharpened pencil, a riding crop, a jagged can, rope, a screwdriver, an ice pick, a tire iron, garden shears, a pitch fork, a shovel, a length of chain, a penknife, a fork, metal pipe, a stick, etc. The foregoing only illustrate the variety of lawful objects which are often innocently possessed without wrongful intent, but under circumstances which are clearly not 'manifestly appropriate' for their lawful use.

"Possession of a fork is manifestly appropriate only at the dinner table, of a bat on the athletic field, of a shovel in the garden." 188 N. J. Super. 432, 437, 457 A. 2d 1184, 1187 (1982).

*Goguen*, 415 U. S. 566, 574 (1974); *Lanzetta* v. *New Jersey*, 306 U. S. 451, 453 (1939). To impose criminal sanctions for the possession of objects simply because the authorities and a jury subsequently decide that the circumstances were not "easily understood or recognized as being appropriate," *State* v. *Wright*, *supra*, at 172, 475 A. 2d, at 39, "leaves open . . . the widest conceivable inquiry, the scope of which no one can foresee and the result of which no one can foreshadow or adequately guard against," *United States* v. *L. Cohen Grocery Co.*, 255 U. S. 81, 89 (1921). The enforcement of such a standardless proscription would appear to be "the exact equivalent of an effort to carry out a statute which in terms merely penalized and punished all acts detrimental to the public interest when unjust and unreasonable in the estimation of the court and jury." *Ibid.*

*Second.* Even more disturbing questions arise with respect to "the more important aspect of the vagueness doctrine . . . —'the requirement that a legislature establish minimal guidelines to govern law enforcement.'" *Kolender* v. *Lawson*, 461 U. S. 352, 358 (1983) (citation omitted) (striking down criminal sanctions against persons who fail to provide "credible and reliable" identification).[4] Where a statute and the judicial decisions which interpret it provide inadequate standards to govern its application, the statute "confers on police a virtually unrestrained power to arrest and charge persons with a violation." *Lewis* v. *City of New Orleans*, 415 U. S. 130, 135 (1974) (POWELL, J., concurring in result). The result obviously is to create a scheme that "furnishes a convenient tool for 'harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure.'" *Papachristou* v. *City of Jacksonville*, 405 U. S. 156, 170 (1972) (citation omitted).

As interpreted by the New Jersey courts, § 2C:39–5d does *not* require the State to prove beyond a reasonable doubt that the

---

[4] The Court has long emphasized the importance of providing minimal guidance. See, *e. g.*, *United States* v. *Reese*, 92 U. S. 214, 221 (1876) ("It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large. This would, to some extent, substitute the judicial for the legislative department of the government"). See also *Gregory* v. *Chicago*, 394 U. S. 111, 120 (1969) (Black, J., concurring) ("[U]nder our democratic system of government, lawmaking is not entrusted to the moment-to-moment judgment of the policeman on his beat").

defendant's possession could not have been pursuant to a legitimate purpose, but merely that the circumstances were "not . . . easily understood or recognized as being appropriate." *State* v. *Wright, supra,* at 172, 475 A. 2d, at 39. Can there be any question that this sweeping standard places "unfettered discretion" in the hands of police, judges, and juries to carry out "arbitrary and erratic arrests and convictions"? *Papachristou* v. *City of Jacksonville, supra,* at 162, 168. Surely this law is unlikely to touch upon the "pillars of the community," 405 U. S., at 163, who are spotted with any of the multitude of potentially dangerous objects in circumstances that are not "easily understood" or "recognized" as "appropriate." See n. 3, *supra.* Rather, there appears to be a grave danger that enforcement of the law will focus on the groups that historically have been the targets of vague legislation such as this—the poor, the minorities, the politically unpopular, and others who happen to be viewed with suspicion by the community's majority.

The absence from § 2C:39–5d of any requirement that the defendant *intend* to use the object in an unlawful manner accentuates the dangers discussed above. We have "long recognized that the constitutionality of a vague statutory standard is closely related to whether that standard incorporates a requirement of *mens rea.*" *Colautti* v. *Franklin,* 439 U. S. 379, 395 (1979). See generally *United States* v. *United States Gypsum Co.,* 438 U. S. 422, 434–446 (1978).[5] The Supreme Court of New Jersey believed, however, that the "not manifestly appropriate" standard functions as a legitimate proxy for *anticipatory* intent: the challenged statute "address[es] the situation in which someone *who has not yet formed an intent* to use an object as a weapon possesses it under circumstances in which it is *likely* to be so used." *State* v. *Lee,* 96 N. J., at 161, 475 A. 2d, at 33 (emphasis added). See generally n. 2, *supra.* We have emphasized the constitu-

---

[5] A statute that requires scienter "mitigate[s]" the vagueness of its other terms by helping to ensure that the defendant had adequate notice and by guarding against capricious enforcement through the requirement that he actually have intended the conduct which the statute seeks to guard against. *Village of Hoffman Estates* v. *The Flipside, Hoffman Estates, Inc.,* 455 U. S. 489, 499 (1982); see also *Grayned* v. *City of Rockford,* 408 U. S. 104, 111, 114 (1972). The absence of such a requirement, on the other hand, enhances the risks of unfair notice and arbitrary enforcement. See, *e. g., Screws* v. *United States,* 325 U. S. 91, 101–102 (1945) (plurality opinion).

tional invalidity of such presumptions. Punishing someone whose conduct "could not be easily understood," *State* v. *Wright*, 96 N. J., at 172, 475 A. 2d, at 39, on the ground that he was "likely" to form a criminal intent in the future

> "is too precarious for a rule of law. The implicit presumption in these generalized . . . standards—that crime is being nipped in the bud—is too extravagant to deserve extended treatment. [Under such a presumption,] the scales of justice are so tipped that even-handed administration of the law is not possible." *Papachristou* v. *City of Jacksonville, supra,* at 171.

The Supreme Court of New Jersey in *State* v. *Lee* advanced two arguments that might be invoked to suggest that Wright's challenge in the instant case is improper. 96 N. J., at 167, 475 A. 2d, at 36. First, it has frequently been stated that a criminal statute will not be struck down unless it is "impermissibly vague in all its applications." *Village of Hoffman Estates* v. *The Flipside, Hoffman Estates, Inc.,* 455 U. S. 489, 495 (1982). A related doctrine stresses that a statute that might be impermissibly vague with respect to some conduct may not be challenged by one whose conduct quite clearly is prohibited by its terms. *Id.,* at 495, n. 7; *Parker* v. *Levy,* 417 U. S. 733, 756 (1974).

For two reasons, these doctrines do not bar Wright's challenge. First, we have emphasized that where a statute imposes criminal penalties the required standard of certainty is high, and a statute that does not satisfy this requirement may be invalidated on its face "even where it could conceivably have . . . some valid application." *Kolender* v. *Lawson,* 461 U. S., at 358–359, n. 8. See also *Colautti* v. *Franklin, supra,* at 394–401; *Lanzetta* v. *New Jersey,* 306 U. S. 451 (1939).[6] Second, the challenged statute must prescribe some coherent, ascertainable standard in the first instance. Where the provision is vague "not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all," it is unconstitutional. *Coates* v. *City of Cincinnati,* 402 U. S. 611, 614 (1971) (striking down statute

---

[6] This requirement of heightened certainty has particular force in the arbitrary enforcement context. See, *e. g., Kolender* v. *Lawson,* 461 U. S., at 358–359, n. 8.

proscribing public conduct "annoying to persons passing by").[7] As interpreted by the state courts, § 2C:39–5d would seem surely to suffer from this fatal defect: it "simply has *no* core. This absence of any ascertainable standard for inclusion and exclusion is precisely what offends the Due Process Clause." *Smith* v. *Goguen*, 415 U. S., at 578 (emphasis in original).

## III

"[T]his is not a case where further precision in the statutory language is either impossible or impractical." *Kolender* v. *Lawson*, *supra*, at 361. First, the legislature may proscribe altogether the possession of certain items or the possession of such items in specified circumstances. This it has done in other contexts. See, *e. g.*, N. J. Stat. Ann. § 2C:39–3 (West 1982). Second, it may prohibit the possession of any item capable of use as a weapon where the possession is actually for the purpose of unlawful use. This, too, it has done. See, *e. g.*, § 2C:39–4d ("Any person who has in his possession any weapon . . . with a purpose to use it unlawfully against the person or property of another is guilty of a crime of the third degree").[8] And it may of course prescribe the full "range of nonpenal alternatives to . . . criminal sanctions." *United States* v. *United States Gypsum Co.*, 438 U. S., at 442.

There is no question that the New Jersey Legislature and the courts below have been motivated in the enactment and construction of § 2C:39–5d by the necessity vigorously to combat crime. See n. 2, *supra*. As important as this goal is, however, "it cannot justify legislation that would otherwise fail to meet constitutional

---

[7] See also *Smith* v. *Goguen*, 415 U. S. 566 (1974) (same with respect to statute punishing anyone who "treats contemptuously" the flag); *Lanzetta* v. *New Jersey*, 306 U. S. 451 (1939) (same with respect to statute punishing anyone for being, *inter alia*, "a member of any gang consisting of two or more persons"); *United States* v. *L. Cohen Grocery Co.*, 255 U. S. 81 (1921) (same with respect to statute proscribing the charging of "unjust or unreasonable" prices for staple goods).

[8] As Judge Antell observed in his dissent in *State* v. *Lee*, the manner and circumstances of a defendant's possession of certain objects frequently will suffice "to support a finding of intent to use them as a weapon." 188 N. J. Super., at 439, 457 A. 2d, at 1188. Perhaps the circumstances of Wright's possession would alone be sufficient to prove culpable intent. However, "the jury was not instructed that such a finding must be made as a condition to arriving at a guilty verdict," *ibid.*, and it is not for this Court to make that factual judgment in the first instance.

standards for definiteness and clarity." *Kolender* v. *Lawson, supra,* at 361. Because I believe there is a serious question whether the imposition of criminal liability for conduct that "could not be easily understood or recognized as being appropriate" intolerably crosses the constitutional line, I respectfully dissent from the Court's dismissal of this appeal.