**UNITED STATES of America**

v.

**Alfred G. MAROUN and Maroun Brothers, Inc., Defendants.**

**CR No. 89–211–T.**

United States District Court,
D. Massachusetts.

June 15, 1990.

Stephen A. Higginson, U.S. Atty., for U.S.

Harvey Silverglate, Silverglate, Gertner, Fine & Good, Boston, Mass., for defendants.

## MEMORANDUM

TAURO, District Judge.

Defendants, Alfred Maroun and Maroun Bros., Inc., were charged in a four-count indictment with "structuring" deposits so as to evade federal reporting requirements that attach to currency transactions in excess of $10,000. Defendants are alleged to have taken $75,000 from a confidential informant and an undercover government agent in May, 1987 for the purpose of laundering these funds. This, the government contends, was accomplished by defendants breaking the lump sum into amounts under $10,000. Defendant Maroun, individually, is alleged to have followed a similar course of illegal conduct with respect to a $40,000 sum in December 1987.

Specifically, Count I charges that defendants conspired to evade the reporting requirements of 31 U.S.C. § 5313(a) in violation of 18 U.S.C. § 371. Count II alleges that defendants, for the purpose of evading the reporting requirements of 31 U.S.C. § 5313(a), structured (or attempted to structure, or assisted in structuring) a reportable currency transaction by breaking up a $75,000 payment and depositing a portion of it in amounts less than $10,000,

in violation of 31 U.S.C. § 5324(3).[1] Count III charges that, individually, Maroun structured a $40,000 payment deposited in his individual account, and that the offense was part of a pattern of illegal activity involving currency transactions that exceeded $100,000 within a 12–month period, in violation of 31 U.S.C. §§ 5324(3) & 5322(b). Finally, Count IV alleges that defendants caused the Arlington Trust Co. to fail to file currency transaction reports and deprived the IRS of accurate information concerning the existence of these transactions, in violation of 18 U.S.C. §§ 2, 1001.

Defendants move to dismiss various counts of the indictment on the grounds that 1) their actions were not within the ambit of § 5324(3); 2) if found to apply, § 5324(3) is unconstitutionally vague; 3) facts alleged in the indictment cannot support liability under 31 U.S.C. § 5322(b) because currency transactions exceeding $100,000 were not shown; and 4) because defendants had no duty to disclose to the government material facts surrounding the illegal activity alleged in the indictment, there was no violation of 18 U.S.C. § 2 or § 1001.

## I.

Congress passed the Currency Transaction Reporting Act, 31 U.S.C.A. § 5311, *et seq.* (West 1983 and Supp.1987) in order to create currency reporting obligations that would be helpful in ferreting out, among other things, money laundering activities associated with proceeds from criminal endeavors. *See generally* S.Rep. No. 433,

99th Cong., 2d Sess. (1986). *See also United States v. Scanio*, 900 F.2d 485, 487 (2d Cir.1990). Under 31 U.S.C. § 5313(a),[2] Congress assigned to the Secretary of the Treasury the responsibility for promulgating regulations that would serve to achieve the intent of Congress. Pursuant to these regulations, financial institutions must report currency transactions in excess of $10,000. *See* 31 C.F.R. § 103.22(a)(1) (1987).[3]

Under his statutory authority, the Secretary could have imposed a reporting obligation upon individual depositors. The Secretary has never followed that course, however. Consequently, some circuits have refused to impose criminal responsibility on depositors who caused banks to fail in their reporting responsibilities. *See, e.g., United States v. Anzalone*, 766 F.2d 676, 682–83 (1st Cir.1985) (conviction for aiding and abetting and concealing material facts from the government reversed and indictment dismissed because § 5313(a) imposed upon defendant no legal duty either not to structure transactions or to disclose currency transactions over $10,000). *See also United States v. Larson*, 796 F.2d 244, 246–247 (8th Cir.1986); *United States v. Varbel*, 780 F.2d 758, 762 (9th Cir.1986); *United States v. Denemark*, 779 F.2d 1559, 1563 (11th Cir.1986). *But see United States v. Heyman*, 794 F.2d 788, 790–93 (2d Cir.), *cert. denied*, 479 U.S. 989, 107 S.Ct. 585, 93 L.Ed.2d 587 (1986) (where multiple currency transactions totalling more than $10,000 in a single day at a single bank, conviction upheld); *United States v. Amer-*

1. The indictment alleges that only $20,790 of the $75,000 was ultimately structured. *See infra,* note 5.

2. When a domestic financial institution is involved in a transaction for the payment, receipt, or transfer of United States coins or currency (or other monetary instruments the Secretary of the Treasury prescribes), in the amount, denomination, or amount and denomination, or under circumstances the Secretary prescribes by regulation, the institution and any other participant in the transaction the Secretary may prescribe shall file a report on the transaction at the time or in the way the Secretary prescribes. A participant acting for another person shall make the report as the agent or bailee of the person and identify

the person for whom the transaction is being made.
   31 U.S.C.A. § 5313(a) (West 1983).

3. § 103.22 **Reports of currency transaction.** (a) (1) Each financial institution other than a casino or the Postal Service shall file a report of each deposit, withdrawal, exchange of currency or other payment or transfer, by, through, or to such financial institution which involves a transaction in currency of more than $10,000. Multiple currency transactions shall be treated as a single transaction if the financial institution has knowledge that they are by or on behalf of any person and result in either cash in or cash out totalling more than $10,000 during any one business day.

*ican Investors of Pittsburgh, Inc.*, 879 F.2d 1087, 1094–1100 (3d Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 368, 107 L.Ed.2d 354 (1989); *United States v. Richeson*, 825 F.2d 17, 19–20 (4th Cir.1987); *United States v. Tobon–Builes*, 706 F.2d 1092, 1096–1101 (11th Cir.1983); *United States v. Thompson*, 603 F.2d 1200, 1202–04 (5th Cir.1979).

In an effort to deal with these differing results in money laundering prosecutions, Congress enacted 31 U.S.C. § 5324 as part of the Anti–Drug Abuse Act of 1986.[4] It provides that:

> No person shall for the purpose of evading the reporting requirements of section 5313(a) with respect to such transaction—
>
> (1) cause or attempt to cause a domestic financial institution to fail to file a report required under section 5313(a);
>
> (2) cause or attempt to cause a domestic financial institution to file a report required under section 5313(a) that contains a material omission or misstatement of fact; or
>
> (3) *structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions.*

31 U.S.C.A. § 5324 (West Supp.1989) (effective January 27, 1987) (emphasis added).

■ For purposes of their motion to dismiss, defendants concede that they did split into several deposits under $10,000, all on different days, what otherwise would have been a $75,000 deposit (and later a $40,000 deposit).[5] Notwithstanding this concession, defendants argue that they cannot be held accountable for structuring currency transactions under § 5324(3), because the bank had no legal obligation to report these transactions. Defendants' argument presumes that their responsibility is derivative of the bank's—that they had a duty only if the bank had one as well. Relying on regulation § 103.22(a)(1), defendants contend that, because their transactions were multiple, the law then in effect did not impose any reporting requirement on the bank.[6] In support of their theory, they point out that the then-applicable regulation treated multiple currency transactions as singular transactions "if the financial institution has knowledge that they are by or on behalf of any person and result in either cash in or cash out totalling more than $10,000 *during any one business day.*" 31 C.F.R. § 103.22(a)(1) (emphasis added). Defendants argue, therefore, that there could have been no attempt to evade the reporting requirement, because none of the alleged cash transactions totalled more than $10,000 during any one business day.

Defendants' position with respect to derivative liability is consistent with First Circuit case law prior to the enactment of § 5324. In *Anzalone*, for example, the court reasoned that an individual depositor could not be found guilty under 18 U.S.C. § 2 (imposing "principal" liability upon one who aids or abets the commission of a violation against the United States) where

---

4. Congress believed that

 [This section] would codify *Tobon–Builes* and like cases and would negate the effect of *Anzalone, Varbel* and *Denemark*. It would expressly subject to potential liability a person who causes or attempts to cause a financial institution to fail to file a required report.... In addition, the proposed amendment would create the offense of structuring a transaction to evade the reporting requirements, without regard to whether an individual transaction is, itself, reportable under the Bank Secrecy Act. *For example, a person who converts $18,000 in currency to cashier's checks by purchasing two $9,000 cashier's checks at two different banks or on two different days with the specific intent that the participating bank or banks not be required to file Currency Transaction*

 *Reports for those transactions, would be subject to potential civil and criminal liability.* S.Rep. No. 433, 99th Cong., 2d Sess., 22 (1986) (emphasis added).

5. The indictment specifically alleges deposits of $9,500, $5,290, and $6,000 on May 7, May 8, and May 12, 1987, respectively. With respect to the second series of charged transactions, the government alleges two separate $9,500 deposits on December 3, two $9,500 deposits on December 4, and a single deposit of $2,000 on December 7, 1987.

6. There is no question that 31 C.F.R. § 103.11(n) (1989), which expressly defines structuring to include the breaking down of transactions into amounts less than $10,000 over multiple days, was not in force at the time of defendants' acts.

the bank, itself, for lack of knowledge of the structured nature of the transaction, could not be held accountable. But, defendants' theory fails to recognize that the enactment of § 5324(3) has changed the statutory landscape since *Anzalone*. Now, an independent basis for individual depositor responsibility exists, because § 5324(3) criminalizes the attempted or successful evasion of federal currency reporting requirements by a bank customer.

Defendants presume that their transactions over several days constitute multiple transactions for purposes of the regulation and, therefore, were not required to be reported by the bank. From this they reason that theirs was a permissible structuring. This court disagrees. But for defendants' intent to evade the reporting requirements, all the money would have been deposited on the same day and, therefore, the bank's reporting requirement would have attached. In essence, defendants' theory would permit them to escape the clear purpose of § 5324(3) by employing the precise tactic that Congress sought to criminalize—structuring a currency transaction to avoid its having to be reported by a bank. Such a theory would have the anomalous effect of rewarding those who successfully misled a bank by structuring currency transactions over a period of days for the purpose of evading the reporting requirement. The focus of § 5324(3) is on the point in time when an amount of currency is structured for the purpose of misleading the bank so as to evade the reporting requirements.[7]

Defendants' reliance on First Circuit precedent is misplaced. Neither *United States v. Bank of New England, N.A.*, 821 F.2d 844 (1st Cir.1987) (upholding bank's conviction for failure to report physical transfers of more than $10,000 in one day to a single customer during a single visit) nor *Anzalone*, 766 F.2d at 676, supports their positions. Neither case involved § 5324(3) which creates the duty that *Anzalone* earlier found missing.

While it did not deal with the issue precisely, the Second Circuit recently sanctioned, in passing, the propriety of convictions involving transactions structured over multiple days. *See Scanio*, 900 F.2d at 485. In *Scanio*, a defendant with some $13,000 outstanding on his line of credit, sought to pay off the balance. Upon learning that a currency report would be generated for that transaction, as it exceeded $10,000, defendant deposited $9,500 on that day, and an additional $3,600 on the following day. He was convicted for structuring a currency transaction over $10,000 to evade the reporting requirement. In reviewing the conviction, the Court of Appeals rejected as unpersuasive, *inter alia*, the argument that defendant could not "be convicted of having structured a currency transaction for the purpose of evading the bank's reporting obligation since [the bank] was not obligated to report the transaction as he had structured it, *i.e.*, over a two-day period rather than within a single day." *Scanio*, 900 F.2d at 492.[8] *Cf. also United States v. Miller*, No. 89 CR 364, 1990 WL 36765 (N.D.Ill. March 15, 1990) (LEXIS, Genfed library, Courts file) (allowed conviction under § 5324(3) for multiple-day transactions).

---

7. Legislative history confirms this view. *See* The Drug Money Seizure Act and the Bank Secrecy Act Amendments: Hearing on S.571 and S.2306 Before the Committee on Banking, Housing, and Urban Affairs, 99th Cong., 2d Sess. 49 (May 1, 1986) (testimony of IRS Assistant Commissioner Richard C. Wassenaar).

8. While it is true that Second Circuit law prior to enactment of § 5324(3) upheld structuring convictions, this is of no moment. While *Scanio* referred to the circuit split over convictions under 18 U.S.C. §§ 2, 1001, it understood this disagreement to have been resolved by the enactment of § 5324. This court agrees. This circuit's concern with the pre–1987 law was that, without articulating a specific duty not to cause a bank to fail to file currency transaction reports, it did not put a reasonable person on notice that his actions were criminal. Section 5324 now imposes, quite clearly (notwithstanding vagueness challenges based on Congress's failure to define "structuring"), that duty. Indeed, the Ninth Circuit, which shared the First Circuit's approach prior to the enactment of § 5324, recently affirmed a § 5324(3) conviction based upon multiple-day transactions. *See United States v. Hoyland*, 903 F.2d 1288 (9th Cir.1990) (intent to evade reporting requirements, without specific knowledge that such an intent violated the law, was enough to support conviction for multiple-day structuring).

Though unnecessary to a plain language reading of § 5324(3), legislative history amply bolsters the interpretation of the statute adopted by this court today. Congress specifically intended to negate the result in *Anzalone* and like cases. *See supra*, note 4. Other courts have read the legislative history to the same end. *See Hoyland*, 903 F.2d 1288 ("Congress was aware that several circuits, including ours, had held it no crime to structure deposits so that the reporting requirement would not be triggered. Congress changed the law to make it a crime so [as] to structure with the intent to prevent reporting."); *Scanio*, 900 F.2d at 488. *Scanio* also recognized that § 5324 was enacted in order to close the loophole in Currency Reporting Act which enabled the laundering of large amounts of ill-gotten currency through the technique of splitting currency transactions over multiple days. *Id.* at 491.

The plain language of 31 U.S.C. § 5324(3) makes clear its application to the facts alleged in this indictment. Section 5324(3) creates a hitherto unrecognized duty not to structure transactions with the intent of causing a bank to fail to file a federally-required currency report.

## II.

■ As an alternative ground justifying dismissal of the indictment against them, defendants also attack § 5324(3) as being unconstitutionally vague. Specifically, they complain that Congress's failure to define the term "structuring" renders § 5324(3) constitutionally infirm by failing to provide adequate guidance and notice to potential violators of what conduct it prohibits. This court disagrees.

The standard against which vagueness challenges to criminal statutes are measured has been articulated as requiring

> that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.

*Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983) (citations omitted). Section 5324(3) meets this standard.[9]

■ Ordinary persons of average intelligence would understand that, where banks are obliged to report transaction over $10,000 (§ 5313(a)), individuals are prohibited from "structuring" transactions to evade the reporting requirement (§ 5324(3)). The instant facts, if proven, constitute a violation of § 5324(3).[10] "Structuring" is not a hypertechnical word.[11] It is reasonable to charge the defendants with an understanding of its plain

---

9. Defendants have made no argument that § 5324(3) lends itself to arbitrary or discriminatory enforcement.

10. The Supreme Court's vagueness decisions make clear that, in this non-first amendment context, the only question before this court is whether § 5324(3) is vague "as applied" to defendants' conduct. *See, e.g., United States v. Barnes*, 890 F.2d 545 (1st Cir.1989) (citing *United States v. Mazurie*, 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975)), *cert. denied*, — U.S. —, 110 S.Ct. 1326, 108 L.Ed.2d 501 (1990).

11. The court takes note of defendants' suggestion that the recent promulgation of regulations specifically defining the term "structuring" somehow constitutes an admission that the prior law was unconstitutionally vague. *See* 31 C.F.R. § 103.11(n) (effective Feb. 22, 1989):

> ... a person structures a transaction if that person, acting alone, or in conjunction with, or on behalf of, other persons, conducts or attempts to conduct one or more transactions in currency, in any amount, at one or more financial institutions, on one or more days, in any manner, for the purpose of evading the reporting requirements under section 103.22 of this Part. "In any manner" includes, but is not limited to, the breaking down of a single sum of currency exceeding $10,000 into smaller sums, including sums at or below $10,000, or the conduct of a transaction, or series of currency transactions, including transactions at or below $10,000. The transaction or transactions need not exceed the $10,000 reporting threshold at any single financial institution on any single day in order to constitute structuring within the meaning of this definition.

This court is not persuaded, however, that the Treasury Department's adoption of a definition condemns the prior version as having been unconstitutionally vague.

meaning, which includes "organizing." [12] Courts facing this question appear to agree that "structuring" has a plain, easily understood meaning.[13] *See United States v. LaFrance, et al.*, 729 F.Supp. 7 (D.Mass. 1989) (Memorandum and Order denying motion to dismiss on vagueness grounds); *United States v. Scanio*, 705 F.Supp. 768, 774 (W.D.N.Y.1988) (" 'The word "structure" has no peculiar, exotic or legal meaning as used in this statute; it is used in its common, ordinary, English language, dictionary meaning. When sections 5313(a) and 5324 are compared and considered together, it is not difficult to determine the kind of conduct that is being prohibited.' ") (quoting *United States v. Camarena*, No. EP–87–CR–133 (W.D.Tex. April 7, 1988) (unpublished opinion)), *aff'd*, 900 F.2d 485.[14]

■ In their reply brief, defendants also challenge the statute's use of the word "evade." They suggest that its use in § 5324 contributes to the law's vagueness, because the term "evasion" has a "diametrically opposite" meaning in the context of tax law. Again, this court disagrees. First, evasion under either statutory scheme is prohibited conduct. Second, the clear meaning of the term "evade" is easily understood, and covers the conduct alleged in the indictment. Last, the distinction in tax law between legitimate avoidance and illegal evasion is not imported into the bank reporting requirements. Section 5324 makes quite clear that any acts taken to prevent a bank from filing currency reports for a reportable transaction is prohibited.

■ Even if there were a more serious question about § 5324(3)'s clarity, it should be resolved in favor of its constitutionality, because of its scienter requirement. *See* 31 U.S.C.A. § 5322 (West 1989). The Supreme Court has recognized that "a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 *reh'g denied*, 456 U.S. 950, 102 S.Ct. 2023, 72 L.Ed.2d 476. *See also Wright v. New Jersey*, 469 U.S. 1146, 1151 n. 5, 105 S.Ct. 890, 894 n. 5, 83 L.Ed.2d 906 (1985) (Brennan, J., with whom Marshall, J., joins, dissenting from

12. The government cites legislative history in response to defendants' vagueness challenge. Evidence of legislative intent is inappropriate, however, in a vagueness inquiry. *See, e.g., Fleuti v. Rosenberg*, 302 F.2d 652, 655 n. 5 (9th Cir.1962) (vagueness doctrine premised in part on the fiction that all persons know the contents of statutes, but does not require persons to know legislative history), *vacated on other grounds*, 374 U.S. 449, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963). *See also United States v. Harriss*, 347 U.S. 612, 617, 74 S.Ct. 808, 811, 98 L.Ed. 989 (1954) (under vagueness doctrine, statute must be judged only on its face); *United States v. Colon–Ortiz*, 866 F.2d 6, 9 (1st Cir.1989) ("It is not enough for congressional intent to be apparent elsewhere if it is not apparent by examining the language of the statute."), *cert. denied*, —— U.S. ——, 109 S.Ct. 1966, 104 L.Ed.2d 434 (1989).

13. Even assuming, *arguendo*, that the term "structuring" is unclear, these decisions have created saving interpretations. *United States v. Wise*, 550 F.2d 1180, 1187 (9th Cir.) (" '[I]f a judicial explication makes a statute clear, so that fair notice is afforded, vagueness may not be imputed.") (citations omitted), *cert. denied*, 434 U.S. 929, 98 S.Ct. 416, 54 L.Ed.2d 290

(1977), *reh'g denied*, 434 U.S. 977, 98 S.Ct. 542, 54 L.Ed.2d 472 (1977). The cited cases use "structuring" to mean the arrangement of a single currency transaction totalling more than $10,000 into multiple currency transactions, each for less than $10,000, for the purpose of evading the reporting requirements. *See, e.g., Heyman*, 794 F.2d at 792 (conviction upheld where account executive "structured his customers' deposits" so as to avoid the reporting requirements "by dividing large sums into smaller portions and depositing them into newly-created accounts on the same day").

14. Defendants reliance on *Anzalone* and other pre–§ 5324(3) cases to buttress their contention that the instant indictment is based upon an impermissibly vague statute is unpersuasive. Those cases have nothing to do with § 5324(3). They *refused to allow convictions* for "structuring" precisely because "structuring" was not then illegal. Indeed, the *Anzalone* court specifically noted that it could "find nothing on the face of either the Reporting Act, or its regulations, or their legislative history, to support the proposition that a 'structured' transaction by a customer constitutes an illegal evasion of any reporting duty of the customer." *Anzalone*, 766 F.2d at 681. Now, § 5324(3) does make that conduct criminal.

dismissal of appeal for want of substantial federal question) ("A statute that requires scienter 'mitigates' the vagueness of its other terms by helping to ensure that the defendant had adequate notice and by guarding against capricious enforcement through the requirement that he actually have intended the conduct which the statute seeks to guard against.") (citations omitted). Here, criminal penalties for violation of § 5324(3) can only be imposed upon a showing of willfulness, as is required under 31 U.S.C. § 5322. This *mens rea* requirement necessarily assures that the defendants will only be convicted upon a showing beyond a reasonable doubt that they intended to evade the currency reporting requirements.

### III.

■ Defendant Alfred Maroun, individually charged under Count III, seeks dismissal of charges against him alleging a pattern of illegal activity involving transactions of more than $100,000 in a twelve-month period. He correctly notes that the facts alleged in his indictment are insufficient to state a violation of 31 U.S.C. § 5322(b).

Section 5322(b), which imposes criminal penalties, provides in pertinent part that:

A person willfully violating this subchapter or a regulation prescribed under this subchapter ... as part of any pattern of any illegal activity involving more than $100,000 in a 12–month period, shall be fined not more than $500,000, imprisoned for not more than 10 years, or both.

31 U.S.C.A. § 5322(b) (West Supp.1989). The government indicted Maroun under the pattern component of § 5322(b) by aggregating the $75,000 alleged to have been given defendants by government opera-

tives in May 1987 with the $40,000 Maroun is alleged to have structured in December 1987. Clearly, the transactions occurred within the required twelve-month period. But, the indictment alleges structuring of only $20,790 of the initial $75,000 sum. *See supra*, notes 1 & 5. Combining that amount with the $40,000 Maroun is said to have later structured, the maximum amount allegedly structured is $60,790. This does not satisfy § 5322(b) which requires a showing of "illegal activity involving transactions of more than $100,000." Because the only illegal activity charged in the indictment is "structuring," and because less than $100,000 was "structured," Count III must be dismissed.

### IV.

■ Count IV charges defendants with violating 18 U.S.C. §§ 2 [15] and 1001,[16] alleging that defendants

did knowingly and willfully conceal and coverup, and cause to be concealed and covered up, by trick, scheme and device, material facts in the matter within the jurisdiction of the Department of Treasury, Internal Revenue Service, which facts were required to be reported pursuant to Title 31, Code of Federal Regulations, Sections 103.21(a) and 103.-26(a).

Defendants contend that they are not liable under § 1001, because they had no reporting duty in 1987. Citing *Anzalone*, they argue that, to prove a violation of § 1001, the government must prove that a legal duty to disclose material facts existed at the time they were concealed. *See Anzalone*, 766 F.2d at 683. While *Anzalone* found that a § 1001 claim could not be stated, it's conclusion was predicated on

---

**15.** (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

18 U.S.C.A. § 2 (West 1969).

**16.** Whoever, in any matter within the jurisdiction of any department or agency of the Unit-

ed States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious, or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both.

18 U.S.C.A. § 1001 (West 1976).

the complete absence of any statutory duty not to evade the bank's reporting requirement. Now that duty exists in the form of § 5324(3).

With respect to the charge under § 2, however, the *indictment cannot stand*, because the enactment of § 5324(3) did not similarly remedy the problem with using § 2 to convict money launderers. While § 5324(3) acknowledges that depositor responsibility is no longer contingent upon bank responsibility, *see supra*, § 2 still requires that link. Defendants cannot have aided or abetted, unless a crime was committed by the bank. Where the bank was not under a legal obligation to report defendants' transactions, because it lacked knowledge of their "structured" nature, it could not have been convicted for failing to file a currency transaction report. Because the bank could not have been convicted, defendants cannot be convicted as aiders and abetters.

### V.

For the foregoing reasons, defendants' Motion To Dismiss Count III is ALLOWED. In addition, defendants' Motion To Dismiss Count IV is ALLOWED to the extent it alleges a violation of 18 U.S.C. § 2. In every other respect, the Motion To Dismiss is hereby DENIED.

An order will issue.