637 A.2d 965

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. JOSE SOTO IRIZARRY, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted January 19, 1994—Decided February 25, 1994.

Before Judges BRODY, STERN and KEEFE.

*Zulima V. Farber,* Public Defender, attorney for appellant (*Donald T. Thelander,* Assistant Deputy Public Defender, of counsel and on the letter brief).

*Maryann K. Bielamowicz,* Mercer County Prosecutor, attorney for respondent (*Scot D. Rosenthal,* Assistant Prosecutor, of counsel and on the letter brief).

The opinion of the court was delivered by

BRODY, P.J.A.D.

Following a jury trial (first trial), defendant was convicted of fourth-degree possession of a weapon, a machete, under circumstances not manifestly appropriate for such lawful uses as it may have, a violation of *N.J.S.A.* 2C:39–5d. After the verdict was returned, defendant was immediately tried before the same jury (second trial) for fourth-degree possession of the machete, made a separate crime by *N.J.S.A.* 2C:39–7 because previously he had been convicted of an aggravated assault. The jury was unable to agree on a verdict as to that charge.[1] Defendant was sentenced to

---

[1] The only additional evidence presented at the second trial was defendant's testimony. Defendant elected not to testify at the first trial after the judge ruled

a probationary term of five years, conditioned on serving 364 days in jail. He was also found guilty of violating the terms of a prior probationary sentence imposed for a drug offense, for which the judge imposed a concurrent five-year probationary term, conditioned on serving 364 days in jail. The violation of probation was the weapon offense conviction. We now reverse the conviction and the violation of probation because at the first trial the assistant prosecutor improperly commented on defendant's failure to testify.

The arresting officer was the only witness at the first trial. He testified that he was patrolling Trenton streets after dark in a police wagon about 5:30 p.m. when he saw defendant standing on the sidewalk talking to someone. Defendant was holding a machete in his right hand. The officer demonstrated how he was holding the machete, but no one described the demonstration for the record while the witness was testifying. It does not appear in the record that defendant was holding the machete in a threatening manner. The officer and his partner stopped their vehicle, left it with guns drawn, and ordered defendant to "freeze." Defendant thereupon fled down an alley, tossing away the machete as he ran. The officer chased defendant on foot, caught him and made the arrest.[2]

■ The nature of the crime contributed to a misunderstanding that led the assistant prosecutor to make the improper comments in his summation. After rendering it unlawful in particular circumstances to possess machine guns, handguns, rifles and shotguns, *N.J.S.A.* 2C:39-5 provides:

---

that if he did, three prior criminal convictions would be admitted into evidence to impeach his credibility.

[2] At the second trial defendant denied that he was holding a machete. He testified that he was holding a walking stick and ran away only because he was also holding an open bottle of rum and did not want to be charged with drinking on a public sidewalk.

> d. Other weapons. Any person who knowingly has in his possession any other weapon under circumstances not manifestly appropriate for such lawful uses as it may have is guilty of a crime of the fourth degree.

The provision deals with weapons, such as knives and machetes, that have both lawful and unlawful uses. The focus is not on the defendant's intent; his purpose is not an element of the crime.[3] *State v. Lee*, 96 *N.J.* 156, 163, 475 *A.*2d 31 (1984) ("[T]he Legislature did not require proof of an intent to use a weapon for an unlawful purpose as an element of a violation of 2C:39–5d.") Rather, the focus is on the circumstances under which the defendant possessed the weapon; to be guilty of the crime the State must prove that one cannot easily understand or recognize that those circumstances were appropriate for such lawful uses as the weapon may have. *State v. Wright*, 96 *N.J.* 170, 172, 475 *A.*2d 38 (1984), *appeal dismissed Wright v. New Jersey*, 469 *U.S.* 1146, 105 *S.Ct.* 890, 83 *L.Ed.*2d 906 (1985).

In her summation, defendant's attorney correctly kept her focus on the circumstances of defendant's possession of the machete, not on defendant's actual intent. The assistant prosecutor, however, misconstrued the argument as focusing on defendant's purpose in possessing the machete.

Defendant's attorney suggested to the jury the lawful uses a machete may have that were appropriate to the circumstances:

> In any event, what circumstances do we have? The police officer simply turned the corner and saw [defendant] with a machete. Saw him, quote, "engaged in conversation." That's how he wrote in his report. He didn't say there was a fight going on.... No voices being raised, no visual hand movements, and nobody looking angry, nobody shouting.... The testimony was simply two men are facing each other, and one has the weapon in this fashion, not pointed at him in that fashion.

> \*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

> What does that all mean in that? We know the most singular and most important question that I asked, it's kind of mixed in with some other questions.

---

[3] Defendant was not charged with the third-degree crime of possessing a weapon, other than a firearm, with a purpose to use it unlawfully against the person or property of another. *N.J.S.A.* 2C:39–4d.

> But the single most important question was, was there anything wrong if I were to take this weapon and walk across the street with it, and hang it on my wall, there's nothing wrong with that. We don't know from the circumstances whether Mr. Irizarry picked this up, found it in the alley, was walking with it, somebody comes along and said, hey, what do you have there, look what I found in the alleyway.

The assistant prosecutor appears to have misunderstood the argument. He believed that defense counsel was arguing that defendant had in fact found the machete on the ground, picked it up with the purpose to take it home to hang on the wall, and that while carrying the machete happened to meet a friend whom he engaged in conversation. With that misunderstanding in mind, he interrupted defense counsel's summation to object, in the hearing of the jury, that there was no testimony to support the argument that when first seen by the arresting officer defendant had just found the machete and was going to take it home to hang it on his wall:

> I don't normally object, I object at this time. There's no such evidence from which to make this argument. *There's no testimony of this fact*, so it's not proper to argue this. [Emphasis added.]

■ The trial judge should have overruled the objection and pointed out to the jury that defendant is not charged with possessing the machete for an unlawful purpose, but rather with possessing the machete under circumstances not manifestly appropriate to its lawful uses; that defendant's attorney was merely arguing that the circumstances of defendant's possession of the machete were appropriate to lawful uses; and that whether defense counsel's argument raised a reasonable doubt as to defendant's guilt was for the jury to decide. Instead, the judge instructed the jury, "[Y]our recollection of the evidence will control." By that instruction he expressed agreement with the assistant prosecutor that the jury should consider whether there was "testimony," presumably from defendant, respecting his purpose in possessing the machete.

Defense counsel thereafter continued her argument that defendant possessed the machete openly and not in a threatening manner. She added that rust on the machete, which was in

evidence, was a circumstance consistent with defendant's having just found it.

[3] Apparently encouraged by the judge's response to his objection, the assistant prosecutor used part of his summation to emphasize again that there was no testimony to support defense counsel's speculations:

> ... But what we hear for the first time *things that we didn't hear from the witness stand*, that we didn't hear as evidence. We heard things about the possibility that someone could collect things in the park, such as maybe collecting goodies. It's a rusty machete, and it could have been found in the park. It could have been found anywhere. That isn't in evidence.
>
> Or you could be walking across the street with machete in hand to hang it up on the wall. *Did you hear that from the witness stand? I know I didn't.* Find it in the alleyway. Remember, you can't speculate beyond the evidence. [Emphasis added.]

By misconstruing defense counsel's argument as an appeal to find facts not supported in the evidence, the assistant prosecutor made pointed references to the absence of testimony that would support such findings. The only absent testimony to which he could have been referring was the testimony of defendant, who had exercised his constitutional right not to testify. Thus, with no acceptable excuse for doing so, the assistant prosecutor unfairly urged the jury to disregard a proper defense argument because defendant did not testify to support it. At the close of the State's summation, defendant's attorney moved unsuccessfully for a mistrial on the ground that the assistant prosecutor improperly commented on defendant's failure to testify.

An assistant prosecutor's comment during summation that the State's evidence stands "uncontradicted," is an impermissible indirect comment on the defendant's decision not to testify if in its context it would have that meaning. *State v. Sinclair*, 49 *N.J.* 525, 548–49, 231 *A.*2d 565 (1967). That is the case here, where the assistant prosecutor could be referring only to the absence of testimony by defendant as to what he had intended to do with the machete. The trial judge erred when he denied defendant's motion for a mistrial based on the constitutional violation.

 The final question is whether the error requires a reversal of the conviction. Because the error deprived defendant of a federal constitutional right, it may not be considered harmless unless it was "harmless beyond a reasonable doubt." *Chapman v. California*, 386 *U.S.* 18, 24, 87 *S.Ct.* 824, 828, 17 *L.Ed.*2d 705, 711, *reh'g den.* 386 *U.S.* 987, 87 *S.Ct.* 1283, 18 *L.Ed.*2d 241 (1967). The error here was not harmless beyond a reasonable doubt. It lent added weight to the State's evidence in a case where the elements of the crime are not clear-cut and the State's proofs left room for a reasonable doubt as to defendant's guilt. We note that during its deliberations the jury asked the judge to "explain what is meant by 'circumstances not manifestly appropriate for a lawful use.'" The jury asked that the explanation be "in writing."

The judgment of conviction and the determination that defendant violated the terms of his probation because of that conviction are reversed. The matter is remanded for a new trial.