NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3894-13T3

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

CRISOFORO MONTALVO,

    Defendant-Appellant.

_____

Submitted January 12, 2016 – Decided February 29, 2016

Before Judges Rothstadt and Currier.

On appeal from the Superior Court of New
Jersey, Law Division, Monmouth County,
Indictment No. 12-06-1157.

Joseph E. Krakora, Public Defender, attorney
for appellant (Lauren S. Michaels, Assistant
Deputy Public Defender, of counsel and on
the briefs).

Christopher J. Gramiccioni, Acting Monmouth
County Prosecutor, attorney for respondent
(Paul H. Heinzel, Special Deputy Attorney
General/Acting Assistant Prosecutor, of
counsel and on the brief).

PER CURIAM

    Defendant Crisoforo Montalvo was charged in an indictment
with third-degree possession of a weapon (a machete) for an
unlawful purpose (N.J.S.A. 2C:39-4 (d)) and fourth-degree
unlawful possession of a weapon (a machete) (N.J.S.A. 2C:39-

5(d)).  After a jury trial, he was convicted of fourth-degree unlawful possession of a weapon and sentenced to 540 days.[1] Defendant appeals his conviction. We affirm.

On March 24, 2012, defendant was involved in a dispute with his neighbor, A.D., who lived in the apartment located directly below his residence.  A.D. testified that around midnight he was in bed reading a book when he heard "some fighting going on upstairs, some exchanges."  He got out of bed and knocked on the ceiling "just to let [his] neighbors . . . know that [he] wasn't happy with what was going on upstairs."

A.D. stated that after knocking on the ceiling, he heard someone descend the stairs from defendant's apartment, walk out onto a porch shared by the two apartments, grab a table, and throw it into the street.  A.D. then went up to the apartment and knocked on the door.  When defendant opened the door, he was holding a machete in his hands.  A.D. asked defendant why he had the machete, to which defendant responded, "I don't care."

A.D. testified that after he left the apartment and called 9-1-1 he heard loud yelling coming from upstairs.  He then heard a noise that sounded "like someone was banging metal into something, cutting something, chopping."  The next morning A.D.

---

[1] Defendant was also charged with and convicted of a disorderly-persons offense of criminal mischief and sentenced to an eighteen-day concurrent term.

stated that he observed damage on the patio which appeared to be caused by a machete.

During the trial, defendant testified that around midnight on the night of these events, he and his wife were "talking, laugh[ing], . . . and [A.D.] start[ed] banging on the ceiling." Defendant stated that he went downstairs and knocked on his neighbor's door, but there was no answer. Defendant then went out to the porch and broke the table. After returning to his apartment, he testified that he was trying to calm his wife down. When A.D. began to bang on his door, defendant stated that he grabbed the machete and answered the door, but did not hold the weapon in a threatening manner.

Officer Jason Gorto, of the Bradley Beach Police Department, responded to the 9-1-1 call and testified that when he arrived at the apartment complex, he was greeted by defendant, who was seated on the front porch. Defendant then approached the officer holding his hands in the air stating, "I got nothing." Gorto and another officer did not see any weapons but noted a broken wooden chair on the edge of the shared porch. After speaking with defendant's wife, she produced a machete from the hall closet and handed it over to the officers.

On appeal, defendant argues:

> POINT I:  BECAUSE IT IS NOT A CRIME TO HOLD A MACHETE WHILE IN ONE'S OWN HOME TO DETER A POTENTIAL ATTACK FROM OUTSIDE, THE

CONVICTION FOR UNLAWFUL POSSESSION OF A WEAPON MUST BE REVERSED. (Not Raised below).

POINT II: BECAUSE THE JURY INSTRUCTION WAS NOT APPROPRIATELY TAILORED TO THE CASE, FAILED TO EXPLAIN THAT SELF-DEFENSE OR NECESSITY MUST BE VIEWED FROM THE STANDPOINT OF A REASONABLE PERSON IN THE DEFENDANT'S SHOES, AND PROVIDED ONLY AN EXCERPT FROM AN INAPPLICABLE SUPREME COURT CASE, MONTALVO'S CONVICTION MUST BE REVERSED.

Defendant contends that the conviction for unlawful possession cannot stand as the State's evidence was insufficient to sustain the verdict. We disagree.

Appellate review of a jury verdict as against the weight of the evidence is only cognizable on appeal when "a motion for a new trial on that ground is made in the trial court." R. 2:10-1. Montalvo did not move for an acquittal at the end of the State's case or a new trial after the verdict, therefore relinquishing his right to appeal the verdict as against the weight of the evidence. Even if we consider the argument phrased by Montalvo that the verdict was a result of insufficient evidence, we find it to be meritless.

N.J.S.A. 2C:39-5(d) renders it illegal to possess a weapon – including a machete - "under circumstances not manifestly appropriate for such lawful uses as it may have." N.J.S.A. 2C:39-5(d). The focus of this statute is not on the defendant's intended use of the weapon but rather on the circumstances under

which the defendant possessed the weapon. See State v. Irizarry, 270 N.J. Super. 669, 673 (App. Div. 1994). The State must prove circumstances that show a threat of harm to either person or property. State in re G.C., 179 N.J. 475, 483 (2004). The combination of a loud argument late at night, the throwing of his neighbor's table off a porch and then answering his door while holding a machete (not a commonplace item) provided sufficient evidence for the jury to assess and determine the lawfulness of defendant's possession of the machete. In reviewing all of the State's evidence in the light most favorable to it, as well as all of the favorable inferences that could be drawn from it, we find that a reasonable jury could have found defendant guilty of the stated charge. State v. Reyes, 50 N.J. 454, 459 (1967).

Regarding defendant's second issue, during its deliberations, the jury sent a note asking "second charge, unlawful possession of a weapon, is self-defense considered a lawful use?" There was a lengthy discussion by the judge with counsel as to the appropriate answer. Defense counsel stated "I think that [it is] appropriate to remind the jury that they have taken the whole circumstances of the situation and if they find that it was manifestly appropriate, then it is a lawful use." The judge agreed with defense counsel and re-charged the jury on the offense including the language

it is necessary for the State to prove that . . . the object was possessed under such circumstances that a reasonable person would recognize that it was likely to be used as a weapon. In other words, under circumstances where it posed a likely threat of harm to others and/or a likely threat of damage to property.

The judge continued by citing to the jury a passage from State v. Kelly, 118 N.J. 370 (1990) (establishing the limited circumstances when a self-defense charge applies to an N.J.S.A. 2C:39-5d offense), which was agreed to by both defense counsel and the State. The judge stated:

Section 5d prohibits the possession of implements as weapons even if possessed for precautionary purposes, except in situations of immediate and imminent danger.

Although self-defense involves a lawful use of a weapon, it does not justify the unlawful possession of the weapon under Section 5d except when a person uses a weapon after arming himself or herself spontaneously to repel an immediate danger.

Obviously there may be circumstances in which a weapon is seized in response to an immediate danger, but ensuing circumstances render its use unnecessary. Under such conditions, the individual may take immediate possession of the weapon out of necessity rather than self-defense. However, it would appear that the availability of necessity as a justification for the immediate possession of a weapon, as with self-defense, is limited only to cases of spontaneous and compelling danger.

Defendant argues that Kelly is inapplicable to this case and that the judge's instruction to the jury to consider all of

the surrounding circumstances in making its determination was also incorrect.

As these arguments were not made to the trial judge, we must review them under the plain error standard. R. 2:10-2. When applied to the review of a jury charge, defendant must demonstrate a "legal impropriety in the charge prejudicially affecting [his] substantial rights . . . and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result." State v. Chapland, 187 N.J. 275, 289 (2006).

We find no error in the judge's charge. Kelly was the controlling case to address the jury's question and the judge's use of the cited passage in conjunction with the substantive charge was appropriate. As the Court stated in Kelly,

> [A] jury charge on self-defense is largely inapplicable in the context of section 5d offenses. If a person possesses an instrument for a legitimate purpose and makes immediate use of that instrument as a weapon in order to fight off an impending threat, then, and only then, is self-defense a justification for a section 5d offense.
>
> [Kelly, supra, 118 N.J. at 381.]

We therefore find no merit in defendant's arguments.

Affirmed.

7                                                          A-3894-13T3

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION