600 S.E.2d 61

SUN LIGHT PREPAID PHONECARD CO., INC., and DTL Companies, Inc., Plaintiffs,

v.

STATE of South Carolina and South Carolina Law Enforcement Division, Defendants.

Phonecards R Us, Inc., R.L. Jordan Oil Company of North Carolina, Inc. and DTL Companies, Inc., Plaintiffs,

v.

State of South Carolina and South Carolina Law Enforcement Division, Defendants,

Of Whom Phonecards R Us, Inc., and R.L. Jordan Oil Company of North Carolina, Inc. are Appellants,

And State of South Carolina and South Carolina Law Enforcement Division are Respondents.

No. 25840.

Supreme Court of South Carolina.

Heard Feb. 4, 2004.

Decided July 6, 2004.

Rehearing Denied Aug. 19, 2004.

Matthew A. Henderson and Joshua M. Henderson, of Henderson, Brandt & Vieth, of Spartanburg, for appellants.

Assistant Attorney General Elizabeth R. McMahon, of Columbia; William H. Davidson, II, and Andrew Lindemann, of Davidson, Morrison, and Lindemann, P.A., of Columbia, for respondents.

W. Hogan Brown, Carl W. Stent, and David M. Barden, all of Columbia, for Amicus Curiae.

Justice MOORE:

We are asked to determine whether the trial court erred by finding certain long distance telephone cards and electronic phone card dispensers to be illegal gambling devices. We affirm.

## PROCEDURAL FACTS

Appellants commenced this action following respondents' (the State's) seizure of appellants' pre-paid, long distance telephone cards (phone cards) and electronic phone card dispensers. Appellants sought the return of the phone cards and dispensers and damages resulting from the seizure. Before hearing the claim for damages, a trial was first held on the declaratory judgment claim to determine the legality of the phone cards and dispensers.[1] The trial court held the phone cards and dispensers were illegal gambling devices.

## FACTS

The phone card dispensers, which are entitled "Lucky Shamrock," were manufactured by Diamond Games Enterprises and distributed and leased by DTL Companies, Inc. to appellants. The promotional materials furnished by the manufacturer and distributor contain a header in large print stating, "Pay Winners in Cash Legally." On this same page, the promotion contains the sentence, "Audio and Visual Effects Make It Look Like a Slot Machine Although It's Not!" The promotional information mentions the sale of the phone cards in the following way: "Sell Hundreds of Phone Cards Every Day Reaping Big Profits!"

The phone cards, including the game pieces, are pre-printed by the manufacturer before they are placed in a dispenser. The cards are printed on rolls containing 7,500 cards. Attached to each phone card is a game piece that gives the customer a chance to win a cash prize. The entire card contains a paper cover, which, when pulled back, reveals a toll-free number and pin number for activating the phone service as well as an array of nine symbols in a 8–liner format.[2] If the game piece contains symbols arranged in a certain order, the customer wins a prize. The computer that prints the card randomly generates winners on the cards. Seventy percent of

---

1. By order of this Court, all magistrate court cases and appeals therefrom arising out of the seizures of the phone card machines and phone cards were stayed pending the conclusion of this action.

2. Appellants' expert agreed that if the card included only the game portion of the card and did not include the phone card, the card would be a pull-tab, which is a gambling device.

the revenue from the cards is paid out in prizes and the rest is a hold percentage.[3]  A hold percentage is the net profit received by the sellers of the cards.  The dispensers do not adjust to ensure the hold percentage is received; however, the amount of the hold percentage is predetermined based on the printing of the phone card rolls.

After printing, the roll of pre-printed phone cards are placed inside the dispenser and the dispenser cannot work without a roll of phone cards inside.[4]  Each card sells for $1 and gives the customer two minutes of long distance telephone service.  The customer can use the two minutes of time by dialing a toll-free number and entering a PIN number.  The customer can also recharge the card and put additional long distance time on the card at the rate of 14.9 cents per minute.

Appellants contend the purpose of the game piece is to promote the sale of the phone cards.  The prizes are paid to the winning customer either by the cashier in the store or by mail, but not by the dispenser itself.  A customer does not need to purchase a phone card to obtain a free game piece.  A free game piece could be obtained from the operator of the dispenser by mail.  Instructions on how to obtain a free game piece were posted on the side of the machine and on the video screen of the machine.

The phone card dispensers are housed within a standard slot machine cabinet.  The dispensers contained several features present in a gambling machine as opposed to a vending machine that simply dispenses a product:  (1) the dispensers contain a video screen that has a gambling theme in that, if the user so chooses, the user can see reels turn as if the winner is chosen by the machine;[5]  (2) if the machine dispens-

---

3.  Sun Light Prepaid Phonecard Company's (Sun Light) promotion was predicted to result in $9,744,000 in prizes and $4,178,000 in net revenue.

4.  Donald Louden, who was involved in the design and building of the machines, testified the phone cards could be purchased from a clerk and did not have to be dispensed by the machines.

5.  The machine does not play a role in determining the winner because the winning cards have already been pre-selected on the phone card rolls.  The machine simply reads the bar code on the back of the phone card and displays that image on the video screen.  The customer can

es a winning game piece, celebration music is played, whereas no music plays if the game piece is a loser; (3) the machine has a lock-out feature which freezes the operation of the machine when a pre-determined level of prize money is reached; (4) the machine contains two hard meters, one is an in-meter that records the amount of money going into the machine, and the other is labelled "WON" and records the value of the prizes issued by the machines; (5) the machine, although it accepts $1, $5, $10, $20, $50, and $100 bills, does not have a mechanism for returning change; and (6) the machines could be linked, a feature of a gambling device.

Further, although the sweepstakes promotion was set to run for 22 months, the long distance service on the phone cards was valid only for six months from the time the *first* phone card pin number was used. There was testimony that appellants, the manufacturer, and the distributor did not keep any records of the phone time used or what pin numbers had been sold via the cards. Also, some stores contained more than one phone card dispenser. According to the lease and purchase agreements, Phonecards R Us, Sun Light, and another company not involved in this case, were under contract to sell 117 million and 360 thousand (117,360,000) cards a year in the state of South Carolina. The South Carolina population in early 2000, the time of the seizures, was only about three million people. A marketing study had not been conducted to determine whether there would be such a high demand for the phone cards. Finally, the phone company from which the long distance service was purchased could not legally provide intrastate service in South Carolina because it had not been licensed to do so.

## ISSUE

Did the trial court err by finding the phone cards and phone card dispensers are illegal gambling devices?

## DISCUSSION

The trial court found the phone cards and phone card dispensers are illegal under S.C.Code Ann. § 12–21–2710 (2000), which provides:

either look at the game piece or the monitor to determine if they have a winning game piece.

> It is unlawful for any person to keep on his premises or operate or permit to be kept on his premises or operated within this State ... *any ... pull board, or other device pertaining to games of chance of whatever name or kind,* including those machines, boards, or other devices that display different pictures, words, or symbols, at different plays or different numbers, whether in words or figures or, which deposit tokens or coins at regular intervals or in varying numbers to the player or in the machine, *but the provisions of this section do not extend to ... vending machines which are constructed as to give a certain uniform and fair return in value for each coin deposited and in which there is no element of chance.*

(Emphasis added).

Appellants argue the phone card dispensers are legal under § 12–21–2710 because they are the same as traditional vending machines and provide a uniform return for every dollar inserted, *i.e.* a phone card. They argue that only when a machine and its components determine who will be a winner does the machine violate § 12–21–2710.

While it is true the dispenser always gives the customer the same return, *i.e.* a phone card with a game piece attached, and that the dispenser does not itself determine whether a customer has won, the dispenser still contains an element of chance.

When printing the phone card rolls, a computer randomly determines which game piece attached to which phone card will be a winner. The phone card roll is then placed inside the dispenser. As testified to by the designer of the dispensers and by appellants' expert, the phone card rolls are an integral part of the machine, and, without them, the dispensers will not work. Therefore, the phone card rolls present the element of chance in the dispensers and cause the cards and the dispensers to violate § 12–21–2710.

Although the phone cards are an integral component of the dispensers, the phone cards would be illegal if they were issued over the counter as opposed to being placed in the dispensers. As the trial court found, § 12–21–2710 declares illegal any pull board or other device pertaining to games of chance. The phone card itself contains an element of chance and is a type of gambling device known as a pull-tab. Appellants' expert stated that if the card did not include the long

distance phone service but only included the sweepstakes portion, the card would be a gambling device. Given the characteristics of the phone cards, the phone portion of the cards is mere surplusage to the game piece. Accordingly, the trial court properly determined the phone cards themselves were illegal gambling devices.

Furthermore, the trial court correctly determined the phone card dispensers are like slot machines and not traditional vending machines. The dispensers have a gambling-themed video screen, play celebration music when a customer is a winner, have a lock-out feature which freezes the operation of the machine when a pre-determined level of prize money is reached, contain a meter that records the value of the prizes paid out, and do not give change. None of these features is present in a traditional vending machine that is exempted from § 12–21–2710.

Accordingly, the trial court properly found the phone cards and dispensers to be illegal gambling devices pursuant to § 12–21–2710.[6]

Appellants further argue the trial court should have found the dispensers and phone cards legal pursuant to S.C.Code Ann. § 61–4–580 (Supp.2003).[7] However, the phone cards and

---

6. Appellants argue that if the dispensers are found illegal under § 12–21–2710, then all vending machines in South Carolina that dispense candy or snacks with promotional sweepstakes game pieces likewise violate the statute, otherwise their equal protection rights would be violated. However, this argument is without merit given the phone card dispensers are illegal gambling devices and vending machines are not. The two machines are *not* similarly situated such that an equal protection claim may arise. *See Whaley v. Dorchester County Zoning Bd. of Appeals*, 337 S.C. 568, 524 S.E.2d 404 (1999) (equal protection is satisfied if: (1) classification bears reasonable relation to legislative purpose sought to be effected; (2) members of class are treated alike under similar circumstances and conditions; and (3) classification rests on some reasonable basis).

The main difference between the dispensers and vending machines is that the vending machines dispense promotional game products that are legitimate because their companies are attempting to promote the sale of those products. The phone card dispensers, on the other hand, do not issue game pieces that are part of a legitimate promotion or sweepstakes. The product being sold to consumers is not the long distance phone service but a game of chance.

7. Section 61–4–580 provides:

dispensers do not meet the requirements of § 61–4–580 because the game pieces are not a legitimate promotion or sweepstakes. Accordingly, the trial court did not err by failing to find the dispensers and phone cards legal pursuant to § 61–4–580.[8]

## CONCLUSION

We find the trial court did not err by finding the two-minute emergency long-distance phone cards and the electronic phone card dispensers to be illegal gambling devices under § 12–21–2710.

**AFFIRMED.**

TOAL, C.J., and Acting Justice ALEXANDER S. MACAULAY, concur.

PLEICONES, J., and Acting Justice DANIEL F. PIEPER dissenting in separate opinions.

Justice PLEICONES:

I agree with the majority that the machines in question are gambling devices that violate S.C.Code Ann. § 12–21–2710

---

No holder of a permit authorizing the sale of beer or wine ... may knowingly commit any of the following acts upon the licensed premises covered by the holder's permit:

. . .

(3) permit gambling or games of chance except game promotions including contests, games of chance, or sweepstakes in which the elements of chance and prize are present and which comply with the following:

    (a) the game promotion is conducted or offered in connection with the sale, promotion, or advertisement of a consumer product or service, or to enhance the brand or image of a supplier of consumer products or services;

    (b) no purchase payment, entry fee, or proof of purchase is required as a condition of entering the game promotion or receiving a prize; and

    (c) all materials advertising the game promotion clearly disclose that no purchase or payment is necessary to enter and provide details on the free method of participation.

**8.** Given the phone cards and dispensers are illegal under § 12–21–2710, it is unnecessary to address appellants' argument that the trial court erred by finding the dispensers illegal under S.C.Code Ann. § 12–22–1040 (2000).

(2000), but would hold they meet the exception found in S.C.Code Ann. § 61–4–580(3) (Supp.2003). Accordingly, I would reverse the circuit court's order.

In 1929, this Court held a machine that dispensed a package of mints for each nickel deposited, and in addition dispensed, at random intervals, between 2 and 20 brass tokens, was an unlawful gambling device under the predecessor to § 12–21–2710.[9] *Harvie v. Heise,* 150 S.C. 277, 148 S.E. 66 (1929). In my opinion, that decision controls the gambling device issue raised here.

Having determined that the dispenser/phone card/game piece scheme here is a gambling device, the next issue is whether it is permitted under § 61–4–580. The General Assembly has legalized games of chances "in connection with the sale, promotion or advertisement of a consumer good or service . . ." if conducted on premises licensed for the sale of beer or wine. § 61–4–580(3). The majority concludes that the phone cards and dispensing machines are without this statute because "the game pieces are not a legitimate promotion or sweepstakes." While I agree that the phone cards are a foolish investment, I do not believe the statute limits promotions or sweepstakes to those where the consumer good or product that is the subject of the promotion is deemed by a court to be "legitimate" or a "good deal." As neither the wisdom nor the legitimacy of the promotion is an issue, I can find no basis to deny these machines and cards the exemption provided by the statute.

---

9. This gambling device statute has been amended over the years as the technology evolved, but the essential structure has remained intact. The version in effect in 1929 read:

It shall be unlawful for any person to keep on his premises or operate or permit to be kept on his premises or operated within this State, any slot machine of whatever name or kind, except automatic weighing, measuring, musical and vending machines which are so constructed as to give a certain uniform and fair return in value for each coin deposited therein, and in which there is no element of chance. Any person whomsoever who shall violate this section shall be subject to a fine of not more than one hundred dollars, or imprisonment upon the public works of the County wherein the offense is committed for a period of not more than thirty days.

2 S.C.Code § 196 (1922).

I would reverse the decision of the circuit court, and hold that these devices are within the ambit of § 61–4–580(3), and thus are legal when placed in licensed premises.[10]

Acting Justice PIEPER:

I concur with Justice Pleicones' opinion as to the interpretation of S.C.Code § 12–21–2710 and strict construction of § 61–4–580. However, since the record is not clear and since the trial court declined to address § 61–4–580, I would first remand for a hearing to determine whether the appellants held a permit and allowed the placement of these machines upon licensed premises in accordance with § 61–4–580. If the trial court finds upon remand that the permit and licensed premises requirements have been met, I would reverse and hold that the devises are legal pursuant to § 61–4–580(3).

---

**10.** It is unclear from the record whether any of appellants are licensed premises within the meaning of § 61–4–580.