PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

JIMMY MARTIN; LUCKY STRIKE
LLC,

Plaintiffs-Appellants,

v.

REGINALD I. LLOYD, as Chief of the
South Carolina Law Enforcement
Division; SCARLETT A. WILSON, as
Solicitor of the Ninth Judicial
Circuit; ALAN WILSON, as The
Attorney General for the State of
South Carolina,                                    No. 11-1405

Defendants-Appellees,

and

ROBERT STEWART, as Chief of the
South Carolina Law Enforcement
Division; HENRY MCMASTER, as
Attorney General of the State of
South Carolina; RALPH HOISINGTON,
as Solicitor of the Ninth Judicial
Circuit,

Defendants.

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
David C. Norton, District Judge.
(2:06-cv-00400-DCN)

Argued: September 18, 2012

Decided: November 21, 2012

Before WILKINSON, MOTZ, and GREGORY,
Circuit Judges.

---

Affirmed by published opinion. Judge Gregory wrote the opinion, in which Judge Wilkinson and Judge Motz joined.

---

**COUNSEL**

**ARGUED:** James Mixon Griffin, LEWIS, BABCOCK & GRIFFIN, LLP, Columbia, South Carolina, for Appellants. Kenneth Paul Woodington, DAVIDSON & LINDEMANN, PA, Columbia, South Carolina, for Appellees. **ON BRIEF:** Richard A. Harpootlian, LAW OFFICES OF RICHARD A. HARPOOTLIAN, Columbia, South Carolina, for Appellants. Alan Wilson, Attorney General, Robert D. Cook, Deputy Attorney General, C. Havird Jones, Jr., Senior Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL, Columbia, South Carolina, for Appellees Alan Wilson and Scarlett A. Wilson; William H. Davidson, II, DAVIDSON & LINDEMANN, PA, Columbia, South Carolina, for Appellee Reginald I. Lloyd.

---

**OPINION**

GREGORY, Circuit Judge:

Appellants Jimmy Martin ("Martin") and Lucky Strike, LLC ("Lucky Strike") appeal the district court's grant of summary judgment in an action to enjoin enforcement of two South Carolina statutes, S.C. Code Ann. §§ 12-21-2710 and 12-21-2712, which prohibit certain "device[s] pertaining to games of chance." Appellants put forward two theories: first, that § 2710 is void for vagueness and thus violates the Due

Process Clause of the Fourteenth Amendment to the United States Constitution. Second, applying a little-used holding of *Ex Parte Young*, 209 U.S. 123, 145-48 (1908), they argue that the statutes violate their right to equal protection under the Fourteenth Amendment because they are required to risk imprisonment, fines and forfeiture of property to obtain a determination as to the legality of a game under the statutes. Because the statutes in question have a legitimate application, we affirm the district court's vagueness holding. We further conclude that the statutes do not fall within the scope of *Ex Parte Young*'s holding. As such, we affirm the district court's ruling.

## I.

Appellant Martin is a citizen of South Carolina in the business of developing and operating gaming machines. After the South Carolina legislature passed anti-gaming legislation in 1999 that outlawed a type of video poker game he was operating, Martin removed all of his machines from the state. *See* 1999 S.C. Act 125. He currently operates games only on Indian-owned sites in Oklahoma. Martin claims that he would like to develop a game that he can operate in South Carolina, but is unable to do so because he is unclear on the reach of the disputed statutes and unwilling to risk criminal prosecution if he unwittingly develops a non-compliant game.

Lucky Strike is a limited liability corporation which operates gaming machines in convenience stores and other locations. Lucky Strike has stated that since 2003, the South Carolina Law Enforcement Division ("SLED"), the agency tasked with enforcing the statutes, has confiscated and destroyed hundreds of its machines. Lucky Strike never challenged any of the seizures. Instead, it chose, along with Martin, to bring this facial challenge to the statutes.

Section 2710 is part of South Carolina's legal framework regulating coin-operated machines and devices. It establishes that:

It is unlawful for any person to keep on his premises or operate or permit to be kept on his premises or operated within this State any vending or slot machine, or any video game machine with a free play feature operated by a slot in which is deposited a coin or thing of value, or other device operated by a slot in which is deposited a coin or thing of value for the play of poker, blackjack, keno, lotto, bingo, or craps, or any machine or device licensed pursuant to Section 12-21-2720 and used for gambling or any punch board, pull board, or other device pertaining to games of chance of whatever name or kind, including those machines, boards, or other devices that display different pictures, words, or symbols, at different plays or different numbers, whether in words or figures or, which deposit tokens or coins at regular intervals or in varying numbers to the player or in the machine, but the provisions of this section do not extend to coin-operated nonpayout pin tables, in-line pin games, or to automatic weighing, measuring, musical, and vending machines which are constructed as to give a certain uniform and fair return in value for each coin deposited and in which there is no element of chance.

Any person violating the provisions of this section is guilty of a misdemeanor and, upon conviction, must be fined not more than five hundred dollars or imprisoned for a period of not more than one year, or both.

Section 2712 sets forth procedures for enforcement of § 2710:

Any machine, board, or other device prohibited by Section 12-21-2710 must be seized by any law enforcement officer and at once taken before any magistrate of the county in which the machine,

board, or device is seized who shall immediately examine it, and if satisfied that it is in violation of Section 12-21-2710 or any other law of this State, direct that it be immediately destroyed.

## II.

This Court reviews a district court's grant of summary judgment *de novo*, applying the same legal standards as the district court. *Nader v. Blair*, 549 F.3d 953, 958 (4th Cir. 2008). Summary judgment is only appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Id.* In determining whether a genuine issue of material fact exists, the Court views the evidence in the light most favorable to the non-moving party. *Id.*

A statute is unconstitutionally vague under the Due Process Clause if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008); *see also South Carolina Medical Ass'n v. Thompson*, 327 F.3d 346, 354 (4th Cir. 2003). When considering a facial challenge, courts first determine whether the enactment implicates a substantial amount of constitutionally protected conduct. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982). If it does not, then the challenge should only succeed if the law is "impermissibly vague in all of its applications." *Id.* at 494-95. As we have explained, a facial challenge is ineffective if the statute has a "plainly legitimate sweep." *United States v. Comstock*, 627 F.3d 513, 518 (4th Cir. 2010) (quoting *Crawford v. Marion Cnty Election Bd.*, 553 U.S. 181, 202 (2008)). However, where a statute imposes criminal penalties, the standard of certainty is higher and the statute can be invalidated on its face "even where it could conceivably have . . . some valid application." *Wright v. New Jersey*, 469 U.S. 1146, 1152 (1985) (quoting *Kolender v. Lawson*, 461 U.S. 352, 358 n.8 (1983)).

Because Appellants bring a facial attack, the first question is whether the statute implicates constitutionally protected conduct. The district court answered this question by pointing to the well-settled proposition that gambling "implicates no constitutionally protected right." *See United States v. Edge Broad. Co.*, 509 U.S. 418, 426 (1993). The parties dispute whether § 2710 can be used to confiscate games that are not used for gambling.\* In any case, Appellants make no argument that § 2710 infringes on constitutionally protected conduct. The appropriate inquiry, then, is whether § 2710 is invalid "in all of its applications," keeping in mind that, because this is a criminal statute, it must be more than a mere "conceivable application." *See Hoffman*, 455 U.S. at 495; *Kolender*, 461 U.S. at 358 n.8.

Appellants concede in their Reply Brief that the statute, taken as a whole, is not impermissibly vague in all its applications. For instance, they do not dispute that poker, blackjack,

---

\*South Carolina cases interpreting § 2710 have frequently upheld enforcement of the statute where machines are used to gamble. In ruling that machines dispensing game cards that could be redeemed for a cash prize were illegal under § 2710, the Supreme Court of South Carolina stated that "[t]he three elements of gambling – consideration, chance and reward – are [ ] clearly present in a device which, for a price, and based upon chance, offers a monetary or merchandise reward to the successful player." *Ward v. West Oil Co.*, 692 S.E.2d 516, 522 (S.C. 2010); *see also Sun Light Prepaid Phonecard Co. v. State of South Carolina*, 600 S.E.2d 61, 64 (S.C. 2004) (holding that machines dispensing phone cards with game pieces attached affording chance to win prize money were illegal under § 2710); *State v. 192 Coin-Operated Video Game Machines*, 525 S.E.2d 872, 877 (S.C. 2000) (holding that possession of slot machines violated § 2710). However, none of these cases state that § 2710 applies only to machines used for gambling. In a recent case, the Court of Appeals of South Carolina agreed with SLED that machines need not be used for gambling to be illegal under the statute. *SLED v. 1-Speedmaster S/N 00218*, 723 S.E.2d 809, 812 (S.C. Ct. App. 2011) ("SLED is correct that section 12-21-2710 does not specifically require that an illegal gaming device be used for gambling."). Respondents in this case appear to contradict the SLED position in *1-Speedmaster S/N 00218*, arguing instead that § 2710 only prohibits games used for gambling.

keno, lotto, bingo and craps are clearly outlawed. However, they argue that one phrase in the statute—the blanket prohibition against possessing any "other device pertaining to games of chance of whatever name or kind," is impermissibly vague in all its applications.

Even when bringing a facial challenge, a party may contest certain provisions of a statute without taking on the whole of the statute. *See, e.g.*, *Reno v. American Civil Liberties Union*, 521 U.S. 844 (1997). However, a court is not confined to the plain language of the contested statute when assessing a void-for-vagueness claim. *See Kolender*, 461 U.S. at 355. A federal court must "consider any limiting construction that a state court or enforcement agency has proffered." *Village of Hoffman Estates*, 455 U.S. at 494 n.5. Further, when considering phrases or words within a statute, those phrases or words should be considered in the context of the statute as a whole. *The Real Truth About Abortion, Inc. v. Fed. Election Comm'n*, 681 F.3d 544, 554 (4th Cir. 2012).

The Supreme Court of South Carolina has provided significant clarity to the disputed phrase by deciding several cases based, at least in part, on whether a device is a game of chance under § 2710 and its predecessor statute. *See State v. DeAngelis*, 183 S.E.2d 906, 908 (S.C. 1971) (affirming a jury's determination that a game requiring "no skill" was illegal under a predecessor statute); *see also Ward v. West Oil Co.*, 692 S.E.2d 516, 522 (S.C. 2010) (holding that pull-tab game machines were illegal games of chance); *Sun Light Prepaid Phonecard Co. v. State of South Carolina*, 600 S.E.2d 61, 64 (S.C. 2004) (holding that machine dispensing phone cards with pull-tab attached was an illegal game of chance). While these cases may not draw definitive parameters around the catchall phrase that Appellants contest, they do demonstrate that use of the term "games of chance" has a "plainly legitimate sweep" and more than a conceivable application, which is all that is required to survive a facial challenge to a

criminal statute where constitutional rights are not implicated. *See Comstock*, 627 F.3d at 518.

Appellants repeatedly assert that § 2710 can be read to outlaw standard board games like Monopoly. The Supreme Court of the United States has made clear that, "[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Village of Hoffman Estates*, 455 U.S. at 495; *see also United States v. Lee*, 815 F.2d 971, 974 (4th Cir. 1987) (explaining that a statute "is not invalid merely because some of its hypothetical applications might raise constitutional problems"). Here, the record does not show that Appellants are in the business of developing family board games. Moreover, they do not describe any concrete example of the kind of game they seek to develop that would better anchor their critique of the law. In discussing § 2710, the Supreme Court of South Carolina has noted that courts should look to whether a machine is intended as a gaming device and "will look behind the name and style of the device to ascertain its true character." *Ward*, 692 S.E.2d at 522 (citing 38 C.J.S. *Gaming* § 10 (Supp. 2010)). South Carolina has taken a measured approach to enforcement for the eighty-one years § 2710 and its predecessor statutes have been in effect. There is no indication that SLED officers might burst into a family's living room and yank a Monopoly board from the hands of a shocked child. Appellants could not refer the Court to a single instance demonstrating that South Carolina has enforced these statutes in this kind of draconian fashion. Appellants made a tactical decision to bring a facial challenge to this law—that decision does not allow them to lean on extravagant hypothetical scenarios that bear no resemblance to their own conduct nor bear out in the historical pattern of enforcement.

Appellants also argue that inconsistent enforcement and judicial rulings on § 2710 establish its vagueness. A difference of opinion amongst judges or law enforcement does not make a statute unconstitutionally vague. *See Williams*, 553

U.S. at 306 ("Close cases can be imagined under virtually any statute. The problem that poses is [not] addressed . . . by the doctrine of vagueness . . ."); *The Real Truth About Abortion*, 681 F.3d at 554-55 (holding that a difference of opinion between a district court and the Federal Election Commission on the enforcement of a regulation does not void the regulation for vagueness). There will be gray areas in the interpretation of many statutes, and sometimes there will be inconsistency in the outcomes of marginal cases, but this is part and parcel of the process of statutory construction that is integral to our common law legal system. *See United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32 (1963).

While § 2710 may not be artfully written, it is not unconstitutionally vague. The enforcement of this statute and the South Carolina courts' interpretation of it has contributed sufficient clarity to meet the relatively low bar for this facial challenge.

## III.

Appellants also argue that the disputed statutes violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because they are forced to risk criminal prosecution, imprisonment, fines, and forfeiture to gain a determination as to whether a proposed game is legal under § 2710. In response to a Request to Admit during discovery, Appellees conceded that South Carolina has no formal mechanism in place to determine the legality of a game other than "to make it operational in the state, subject it to seizure by law enforcement, hav[e] it taken before a magistrate judge to determine if the machine is legal or illegal and ris[k] forfeiture of the machine and criminal prosecution." Appellants urge the application of *Ex Parte Young*'s holding that a state cannot force a party to risk severe penalties to obtain a judicial determination if that determination involves a complicated or technical question of fact. 209 U.S. at 145, 148.

In *Young*, a Minnesota law set caps on rail transportation rates and subjected agents or employees of any rail company exceeding the rate to high fines and imprisonment. *Id.* at 145. No pre-enforcement mechanism existed to test the legality of the rates. *Id.* at 145-46. The Court held that the lack of a pre-enforcement hearing violated due process and equal protection because any railroad agent or employee would have to risk enormous fines and possible imprisonment to test the validity of the rates. *Id.* at 146-47. The Court reasoned that the statutory scheme effectively closed off access to the courts. *Id.* As the Court clarified in a later case, "th[e] right [to judicial review] is merely nominal and illusory if the party to be affected can appeal to the courts only at the risk of having to pay penalties so great that it is better to yield to orders of uncertain legality rather than to ask for the protection of the law." *Wadley S. Ry. Co. v. Georgia*, 235 U.S. 651, 661 (1915).

While *Young* addressed railroad rates, courts have recognized this theory in other contexts. *See Solid State Circuits v. U.S. Env. Prot. Agency*, 812 F.2d 383, 391-92 (8th Cir. 1987) (holding CERCLA damages scheme constitutional under *Young* only because parties opposing a clean-up order may test its validity without risk of punitive damages if they have an objectively reasonable basis for believing the order invalid or inapplicable); *Pactiv Corp. v. Chester*, 455 F. Supp. 2d 680, 691-93 (E.D. Mich. 2006) (recognizing viability of *Young* theory in determining constitutionality of Michigan's Natural Resources and Environmental Protection Act); *Reedy v. Borough of Collingswood*, 2005 WL 1490478, at 9-10 (D.N.J. June 22, 2005) (recognizing viability of *Young* theory in the context of property maintenance and fire safety codes that landlords could not appeal without risk of substantial penalty); *Aminoil v. United States*, 599 F. Supp. 69, 74-75 (C.D. Cal. 1984) (granting preliminary injunction on basis that CERCLA daily penalty and damages scheme was likely unconstitutional under *Young* because there was no opportunity for a hearing prior to issuance of administrative order).

We do not believe that *Young* is applicable in this case, however, because § 2710's scope and validity is sufficiently clear and the risks are too attenuated.

The *Young* Court warned that its holding did not apply to the typical statute where application is apparent without investigation, but only to statutes where application "depends upon the existence of a fact which can be determined only after investigation of a very complicated and technical character." 209 U.S. at 147-48. To reiterate, there is no question about the multiple categories of games that § 2710 specifically covers. Even when considering the application of the disputed catchall provision in the statute, a simple formula determines the outcome: if skill predominates, then it is permissible, and if chance predominates, then it is prohibited. We do not believe that understanding which side of the line a game falls on necessitates the kind of intensive investigation and technical analysis that *Young* requires. There will certainly be close calls when a game is in the gray area. Magistrate judges determining the legality of these games may very well admit evidence from experts and examine the results of complex testing. But, there are countless statutes with catchall phrases that contain infirmities. Deciding that this catchall phrase should fail because it, too, contains a gray area would place this Court on a slippery slope.

Additionally, the historical record of enforcement of § 2710 does not support Appellants' argument that they risk dire criminal prosecution if they put a game into operation that turns out to be illegal. The statute that the Court struck down in *Young* was newly minted and untested. 209 U.S. at 126-27. Here, Appellants had an eighty-one year long track record at their disposal and could not cite to a single instance in which South Carolina had instituted the kind of criminal prosecution that concerns them. To the extent this statutory scheme may give rise to abuse in the future, the Appellants are free to bring an as-applied challenge. However, there is little basis for the facial challenge they bring here.

For the foregoing reasons, we affirm the judgment of the district court.

*AFFIRMED*