**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

### No. 20-1879

DENNIS FUSARO,

      Plaintiff – Appellant,

    v.

CHARLTON T. HOWARD, III, Maryland State Prosecutor, in his official capacity; MICHAEL R. COGAN, Maryland State Board of Elections; VICE-CHAIRMAN PATRICK J. HOGAN, Maryland State Board of Elections; WILLIAM G. VOELP, Maryland State Board of Elections; MEMBER KELLEY A. HOWELLS, Maryland State Board of Elections; MALCOLM L. FUNN, Maryland State Board of Elections,

      Defendants – Appellees.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Ellen L. Hollander, District Judge. (1:17-cv-03582-ELH)

Argued: September 23, 2021                  Decided: November 19, 2021

Before GREGORY, Chief Judge, and KING and FLOYD, Circuit Judges.

Affirmed by published opinion. Judge King wrote the opinion, in which Chief Judge Gregory and Judge Floyd joined.

**ARGUED:** Stephen Ralph Klein, BARR & KLEIN PLLC, Washington, D.C., for Appellant. Andrea William Trento, OFFICE OF THE ATTORNEY GENERAL OF

MARYLAND, Baltimore, Maryland, for Appellees. **ON BRIEF:** Brian E. Frosh, Attorney General, Adam D. Snyder, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF MARYLAND, Baltimore, Maryland, for Appellees

KING, Circuit Judge:

Plaintiff Dennis Fusaro appeals from the district court's rejection of his constitutional claims concerning § 3-506 of Maryland's Election Law. That statute provides, in relevant part, that a list of Maryland registered voters (the "List") may be given to an applicant who is himself a registered Maryland voter, *see* Md. Code, Elec. Law § 3-506(a)(1) (the "Access Provision"), so long as the applicant attests that he will use the List for purposes that are "related to the electoral process," *id.* § 3-506(a)(1)(ii)(2) (the "Use Provision"). In 2017, Fusaro filed suit in the District of Maryland against various Maryland state officials. *See Fusaro v. Howard*, No. 1:17-cv-03582 (D. Md. Dec. 14, 2017), ECF No. 1 (the "Complaint"). In effect, Fusaro asserted three constitutional claims: (1) the Access Provision contravenes the Free Speech Clause of the First Amendment; (2) the Use Provision also violates the Free Speech Clause; and (3) the Use Provision is unconstitutionally vague under the Free Speech Clause and the Fourteenth Amendment's Due Process Clause. Each claim was presented both facially and as-applied.

In 2019, after the district court dismissed Fusaro's Complaint for failure to state a claim for relief cognizable under the First Amendment, Fusaro appealed. By decision of July 12, 2019, we vacated the district court's dismissal of the Complaint. *See Fusaro v. Cogan*, 930 F.3d 241, 245 (4th Cir. 2019). In remanding for further proceedings, we requested the court to analyze Fusaro's free speech claims under the standard articulated by the Supreme Court in *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992). Moreover, we requested that the court reach and resolve the merits of Fusaro's vagueness claim.

3

On remand, in an opinion filed last year, the district court awarded summary judgment to the Maryland state officials on Fusaro's Use Provision-based free speech and vagueness claims. *See Fusaro v. Howard*, 472 F. Supp. 3d 234 (D. Md. 2020). For reasons explained *infra*, the court did not assess or review the merits of Fusaro's Access Provision-based free speech claim. In this second appeal, Fusaro has abandoned that claim, leaving only the two claims contesting the Use Provision. With respect to the free speech claim, Fusaro asserts that the Use Provision should be subjected to strict scrutiny review, and, in any event, it fails to pass muster under the *Anderson-Burdick* balancing test. Once more, Fusaro also maintains that the Use Provision is unconstitutionally vague. As explained herein, however, we affirm the district court's judgment.

## I.

## A.

As more fully detailed in our earlier *Fusaro* decision, *see* 930 F.3d at 244-47, Fusaro is a resident of and registered voter in the Commonwealth of Virginia. Fusaro has worked on regional and national political campaigns, and he intends to "continue his involvement in elections and political advocacy," including in Maryland. *See* Complaint ¶ 16. In 2014, Fusaro consulted for a successful county-level campaign in Maryland. In connection

therewith, Fusaro was criminally charged in 2016 by the Maryland State Prosecutor for violating certain misdemeanor provisions of Maryland's Election Law.[1]

In August 2017, Fusaro was acquitted by a jury in Anne Arundel County of all charges. As a result of that prosecution, Fusaro wanted to send a letter expressing his displeasure with then-State Prosecutor Emmett C. Davitt, "shar[ing] his story with Maryland citizens," and urging them to seek Davitt's resignation. *See* Complaint ¶ 2. To facilitate that letter writing campaign against Davitt, Fusaro sought a copy of the List made available under § 3-506 from the Maryland State Board of Elections (the "State Board").[2] Fusaro planned to use the List to circulate the letter criticizing Davitt, notwithstanding that Davitt holds an appointed — rather than elected — office. The letter that Fusaro intended to circulate acknowledged that "Davitt was appointed" State Prosecutor. *See* J.A. 20.[3]

Fusaro thereafter applied for a copy of the List, but his application was rejected by the State Board because he was not a registered Maryland voter, as required by the Access Provision. The statutory provisions concerning the List are set forth in § 3-506:

---

[1] The State Prosecutor possesses statewide jurisdiction and has the authority to investigate and prosecute violations of Maryland law. *See* Md. Code, Crim. P. §§ 14-107(a), 14-109(a). The State Prosecutor is not elected but is instead appointed by the Governor, with the advice and consent of the Maryland Senate. *Id*. § 14-102(c)(1).

[2] In our earlier *Fusaro* decision, we took judicial notice of the State Board's documents describing the List as a matter of public record. *See* 930 F.3d at 246 n.3. According to the State Board, the List contains the names, addresses, party affiliations, and other personal data of the nearly four million Maryland registered voters. A copy of the List can be obtained for $125 and, for an additional $3, is available on a compact disc.

[3] Citations herein to "J.A. __" refer to contents of the Joint Appendix filed by the parties in this appeal.

(a) (1) A copy of a list of registered voters shall be provided to a Maryland registered voter on receipt of:

(i) a written application; and

(ii) a statement, signed under oath, that the list is not intended to be used for:

1. commercial solicitation; or

2. any other purpose not related to the electoral process.

* * *

(c) A person who knowingly allows a list of registered voters, under the person's control, to be used for any purpose not related to the electoral process is guilty of a misdemeanor and, on conviction, is subject to the penalties under Title 16 [of the Election Law].

*See* Md. Code, Elec. Law § 3-506(a), (c).[4]

Notably, § 3-505 of Maryland's Election Law makes publicly available the same voter registration information contained within the List. *See* Md. Code, Elec. Law § 3-505(b)(1). That information is "open to public inspection" at the State Board's local offices in each county. *Id.* Those voter registration records can also be removed from the local State Board office "on order of a court" or "for temporary removal solely for purposes of

---

[4] Knowing use of the List for any purpose not related to the electoral process constitutes a misdemeanor that may result in a fine or imprisonment for 30 days to six months. *See* Md. Code, Elec. Law § 3-506(c) (noting that violations are subject to penalties under Title 16 of Maryland's Election Law); *see also* Md. Code, Elec. Law § 16-1001(a) (providing that "[a] person convicted of a misdemeanor . . . for which no penalty is specifically provided is subject to a fine . . . or imprisonment" for 30 days to six months). In addition, those who acquire the List and sign the oath may also be prosecuted for perjury for violating § 3-506(a), with penalties of imprisonment for up to 10 years. *See* Md. Code, Elec. Law § 16-501(a), (c); *see also* Md. Code, Crim. Law § 9-101(b).

data processing." *Id.* § 3-505(b)(2)(ii). Additionally, under § 3-505, there are no fees associated with obtaining that information, nor are there any statutory restrictions limiting use thereof to purposes that are "related to the electoral process."

B.

In December 2017, Fusaro filed suit in the District of Maryland against Davitt and members of the State Board (collectively, the "State").[5] The Complaint asserted the aforementioned free speech and vagueness claims, with each claim pursued both facially and as-applied.[6] As exhibits to the Complaint, Fusaro submitted his letter criticizing Davitt, his rejected application for the List, and his correspondence with the State Board.

In September 2018, the district court granted the State's motion to dismiss the Complaint for failure to state a claim for relief cognizable under the First Amendment. In

---

[5] The State Board members originally named as defendants were Chairman David J. McManus, Jr., Vice-Chairman Patrick J. Hogan, Michael R. Cogan, Kelley A. Howells, and Gloria Lawlah.

[6] We pause here to explain the distinction between facial and as-applied challenges to the constitutionality of a statute. In an as-applied challenge, "the state must justify the challenged regulation with regard to its impact on the plaintiffs." *See Educ. Media Co. at Va. Tech, Inc. v. Insley*, 731 F.3d 291, 298 (4th Cir. 2013). Under a facial challenge, the plaintiff may sustain its burden in one of two ways. First, the plaintiff "may demonstrate 'that no set of circumstances exists under which the law would be valid, or that the law lacks any plainly legitimate sweep.'" *See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Balt.*, 721 F.3d 264, 282 (4th Cir. 2013) (en banc) (alterations omitted) (quoting *United States v. Stevens*, 559 U.S. 460, 472 (2010)). Second, the plaintiff may "show that the law is overbroad because a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Id.* In either scenario, a court must assess the constitutionality of the challenged law "without regard to its impact on the plaintiff asserting the facial challenge." *See Educ. Media Co. at Va. Tech, Inc. v. Swecker,* 602 F.3d 583, 588 (4th Cir. 2010).

7

so ruling, the court rejected both of Fusaro's free speech claims on the ground that he had no First Amendment right to the List, insofar as § 3-506 merely regulated access to a record that was created and maintained by the State Board. At that time, the court did not directly address or reach the merits of Fusaro's vagueness claim.

In our *Fusaro* decision of July 12, 2019, we disagreed with the district court and concluded that both the Access and Use Provisions implicate the First Amendment right to free speech. *See* 930 F.3d at 256. As such, we proceeded to identify the correct level of scrutiny applicable to Fusaro's free speech claims. *Id.* In so doing, we determined that the Access and Use Provisions are subject to the standard set forth in the Supreme Court's *Anderson* and *Burdick* decisions. *Id.* at 258. Pursuant thereto, "a court must first determine whether the protected rights are severely burdened. If so, strict scrutiny applies." *Id.* at 257-58 (quoting *McLaughlin v. N.C. Bd. of Elections*, 65 F.3d 1215, 1221 (4th Cir. 1995)). If the protected rights are not severely burdened, however, "the court must balance the character and magnitude of the burdens imposed against the extent to which the regulations advance the state's interests in ensuring that order, rather than chaos, is to accompany the democratic processes." *Id.* at 258 (quoting *McLaughlin*, 65 F.3d at 1221).

Because it was clear to us that the Access and Use Provisions do not severely burden First Amendment rights, we were "satisfied that the resolution of Fusaro's claims turn[ed]" not on strict scrutiny review, but rather "on the balancing of interests described in the *Anderson-Burdick* framework's subsequent steps." *See Fusaro*, 930 F.3d at 259. Consequently, we requested that on remand the district court apply the *Anderson-Burdick*

8

balancing test to assess Fusaro's free speech claims. *Id.* at 263-64. We also requested the court to resolve the merits of Fusaro's vagueness claim. *Id.* at 264.

## C.

The parties thereafter initiated and conducted discovery in the remand proceedings. At that time, Fusaro moved pursuant to Federal Rule of Civil Procedure 15(d) for leave to file a supplemental complaint. *See Fusaro v. Howard*, No. 1:17-cv-03582 (D. Md. Sept. 10, 2019), ECF No. 41 (the "Supplemental Complaint"). Pursuant to Federal Rules of Civil Procedure 10(b) and 10(c), the Supplemental Complaint incorporated all relevant paragraphs of the Complaint, including Fusaro's acknowledgement that his letter concerning the State Prosecutor "literally cannot . . . be reasonably interpreted to relate to elections or to the electoral process." *See* Complaint ¶ 35. The Supplemental Complaint also referred to Davitt's retirement as State Prosecutor and contained as an exhibit another letter that Fusaro wished to send to Maryland registered voters. That letter described Fusaro's litigation efforts and read, in relevant part, that "[a]s a registered voter you may or may not vote in state-level elections in the 'Free State' but your voice can and should be heard when it comes to the way public officials — elected or appointed — behave in office." *See* J.A. 537.[7]

---

[7] Several of the original named defendants have been automatically replaced. *See* Fed. R. Civ. P. 25(d) ("When a public officer who is a party in an official capacity . . . ceases to hold office while the action is pending," the "officer's successor is automatically substituted as a party" and "[l]ater proceedings should be in the substituted party's name."). The State Board defendants now include Chairman Michael R. Cogan, Vice-Chairman Patrick J. Hogan, William G. Voelp, Kelley A. Howells, and Malcolm L. Funn. Kelly B. Madigan, who was interim State Prosecutor following Davitt's retirement, was also a (Continued)

In his November 2019 deposition, Fusaro testified to his plans for using the List. Fusaro indicated that, even after Davitt's retirement as State Prosecutor, he wanted to send the second letter because "there's a risk that [Davitt's] previous example may be adopted by the current State Prosecutor." *See* J.A. 347. Fusaro also said that Maryland registered voters were his "best audience" because "elected officials and/or appointed officials who derive their power from elected officials by and large to make public policy are most sensitive to those who . . . give to them or take away from them their power." *Id.* at 333. Fusaro explained that he wanted his letters to have "the most impact" so his efforts could be "the most effective." *Id*. at 334. At the same time, Fusaro acknowledged he would "[p]robably" only be willing to spend "several hundred dollars" sending out the letters. *Id.* at 336. He admitted that he had not considered any source of data other than the List because, in his view, the List was the most reliable source of voter registration information.

The State submitted a response to Fusaro's discovery requests from Charlton T. Howard III, who was by then serving as State Prosecutor. According to Howard, Maryland's interests in limiting use of the List to purposes "related to the electoral process" were twofold: first, to protect the privacy of Maryland's voters, and second, to encourage voter registration and participation in Maryland's elections. *See* J.A. 297-98. More specifically, Howard declared that use of the List is restricted to safeguard the privacy of

---

substituted defendant. Thereafter, Charlton T. Howard III succeeded Madigan and became the permanent State Prosecutor and thus another substitute defendant.

10

Maryland citizens, because the List contains "sensitive, personally identifiable information . . . all collected in a single file." *Id*. at 297.

Contrary to allegations set forth in the Complaint that Fusaro's letters "literally cannot . . . be reasonably interpreted to relate to elections or to the electoral process," *see* Complaint ¶ 35, Fusaro's December 2019 affidavit averred to the contrary. There, Fusaro insisted that, even after reviewing the testimony and discovery responses from the State Prosecutor and the State Board, he still did not "understand what is authorized or prohibited by the term 'related to the electoral process.'" *See* J.A. 350-51; *but see* Complaint ¶¶ 20, 22, 26, 35. He also claimed that he did not know whether state law prohibited him from sending either of his letters. Fusaro also expressed concern that, in the future, he would potentially be prosecuted for sending one of his letters. And because of those fears, Fusaro indicated that he would not seek a copy of the List from any third-party sources.

In his discovery requests, Fusaro also asked the State to identify how it determines whether a particular applicant's use of the List falls within the "electoral process." The State responded that applicants are not required to disclose their intended use of the List to the State Board because the State Prosecutor makes that determination. The State Board occasionally consults "publicly available sources to learn information about organizations" that apply for the List, when the "identity of the organization" requesting the list "may raise questions as to the permissibility of the intended use." *See* J.A. 261.

Howard declined to admit or deny Fusaro's request for admission that each of his proposed letters contravened the Use Provision because that determination depended "on numerous other factors not addressed by [Fusaro's] abstract hypothetical." *See* J.A. 301.

11

In addition, Howard advised that, to date, no one had been prosecuted by the State Prosecutor for violating the Use Provision.

## D.

Before the parties filed their summary judgment motions, the district court made a dispositive ruling in a separate proceeding called *Judicial Watch, Inc. v. Lamone*. In *Lamone*, the court ruled that § 3-506's Access Provision was preempted by the National Voter Registration Act. *See* 399 F. Supp. 3d 425, 442-45 (D. Md. 2019). On May 26, 2020, the court dismissed the case as settled.

## E.

Soon thereafter, the parties filed their cross-motions for summary judgment in this litigation. For reasons explained in its opinion of July 14, 2020, the district court denied Fusaro's motion and awarded summary judgment to the State. *See Fusaro*, 472 F. Supp. 3d at 267.[8] The court did not assess or resolve the merits of Fusaro's Access Provision-based free speech claim. *Id.* at 256-57. The court explained that it was unnecessary to address that constitutional claim because under its decision in *Lamone*, the Access Provision no longer prevented Fusaro from accessing or obtaining a copy of the List. *Id.*[9]

---

[8] On the same day that it filed its summary judgment opinion (July 14, 2020), the district court granted Fusaro's motion for leave to file the Supplemental Complaint.

[9] Following the *Lamone* decision, Fusaro filed a renewed application and payment to the State Board for a copy of the List. He received the List on August 14, 2020, and has now abandoned his Access Provision-based free speech claim. At oral argument in this appeal, the parties agreed that claim is moot.

12

On the merits of Fusaro's remaining free speech claim, the district court explicitly rejected Fusaro's contention that, notwithstanding our decision in *Fusaro*, it should apply strict scrutiny. *See Fusaro*, 472 F. Supp. 3d at 257. Rather, the court applied the *Anderson-Burdick* balancing test and concluded that because the State's interests outweighed the burdens imposed on Fusaro's rights, the Use Provision — as applied to him — did not contravene the Free Speech Clause. *Id.* at 259. The court next ruled that, as applied to Fusaro, the Use Provision was not unconstitutionally vague under the First and Fourteenth Amendments. *Id.* at 267. Finally, because each of Fusaro's as-applied claims had failed, the court by extension rejected Fusaro's facial challenges. *Id.* Fusaro timely noted this appeal, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

II.

We review de novo a district court's disposition of cross-motions for summary judgment. *See Bostic v. Schaefer*, 760 F.3d 352, 370 (4th Cir. 2014). "When cross-motions for summary judgment are before a court, the court examines each motion separately, employing the familiar standard under Rule 56 of the Federal Rules of Civil Procedure." *See Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 354 (4th Cir. 2011). Under that standard, "[s]ummary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *See Lawson v. Union Cnty. Clerk of Court*, 828 F.3d 239, 247 (4th Cir. 2016) (quoting Fed. R. Civ. P. 56(a)). We also review de novo a district court's rulings on the constitutionality of a statute. *See Miller v. Brown*, 503 F.3d 360, 364 (4th Cir. 2007).

13

III.

In this appeal, Fusaro contests the district court's summary judgment award to the State relative to his Use Provision-based free speech and vagueness claims. With respect to the free speech claim, Fusaro asserts that the Use Provision should be subjected to strict scrutiny review, and, in any event, it fails to pass muster under the *Anderson-Burdick* balancing test. Regarding the vagueness claim, Fusaro maintains that the phrase "related to the electoral process," as set forth in the Use Provision, is unconstitutionally vague. Just as they were raised below, Fusaro pursues those two claims both facially and as-applied.

We begin with Fusaro's claim that — as applied to him — the Use Provision contravenes the Free Speech Clause. Utilizing the *Anderson-Burdick* balancing test, we conclude that claim is without merit. Next, we turn to Fusaro's as-applied vagueness claim, which we also find unavailing. Finally, we reject each of Fusaro's facial challenges. We thus affirm the district court's summary judgment award to the State.

A.

We first assess whether the Use Provision, as applied to Fusaro, contravenes the Free Speech Clause of the First Amendment. As we requested in *Fusaro*, the district court analyzed the Use Provision under the *Anderson-Burdick* balancing test and awarded summary judgment in favor of the State. We agree with the court's analysis.

1.

As an initial matter, we briefly address Fusaro's contention that we should apply strict scrutiny — and not the *Anderson-Burdick* balancing test — to decide whether the Use Provision contravenes the Free Speech Clause. The law of the case doctrine, however,

14

compels us to adhere to our prior decision in *Fusaro*, which requires the application of the *Anderson-Burdick* balancing test to Fusaro's remaining free speech claim.

Generally, the law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *See United States v. Aramony,* 166 F.3d 655, 661 (4th Cir. 1999) (quoting *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 815-16 (1988)). Those stages include a subsequent appeal in the same litigation. *See TFWS, Inc. v. Franchot*, 572 F.3d 186, 191 (4th Cir. 2009). As such, once the decision of our Court establishes the law of the case, we adhere to that decision in subsequent appellate rulings "unless: (1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice." *See Aramony,* 166 F.3d at 661 (internal quotation marks omitted).

Relative to the third *Aramony* exception, we have observed that for a prior decision of this Court to be "clearly erroneous," it cannot be "just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." *See TFWS, Inc.*, 572 F.3d at 194 (internal quotation marks omitted). That is, in order for this exception to apply, the prior decision must be "dead wrong." *Id.*

In *Fusaro*, we ruled that, as to Fusaro's free speech claims, the Access and Use Provisions should both be analyzed under the *Anderson-Burdick* balancing test. *See Fusaro*, 930 F.3d at 255, 263 (concluding that "restrictions that [§] 3-506 imposes on access to the list . . . and use of the list" both fall under *Anderson-Burdick* balancing test).

15

In so ruling, we concluded that because First Amendment rights are not severely burdened by either the Access or Use Provision, strict scrutiny does not apply.

Absent an *Aramony* exception, we must abide by our prior decision in *Fusaro*. None of those exceptions apply here. The first two *Aramony* exceptions are inapposite because there has been no subsequent trial or a change in controlling precedent that compels us to abandon *Fusaro*. As to the third exception, we find no conceivable rationale that would permit us to reach the conclusion that *Fusaro* "was clearly erroneous and would work manifest injustice." *See Aramony*, 166 F.3d at 661 (internal quotation marks omitted). In other words, we cannot say that *Fusaro* was "dead wrong." *See TFWS, Inc.*, 572 F.3d at 194. Indeed, we remain convinced of the correctness of our *Fusaro* decision.[10]

2.

a.

We accordingly turn to our application of the *Anderson-Burdick* balancing test to Fusaro's claim that the Use Provision — as applied to him — contravenes the Free Speech Clause of the First Amendment. That clause provides that "Congress shall make no law . . . abridging the freedom of speech." *See* U.S. Const. amend. I. Moreover, the Fourteenth Amendment makes those protections equally applicable to the states. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 245 n.10 (4th Cir. 1999).

---

[10] Fusaro maintains that the Supreme Court's decision in *Sorrell v. IMS Health, Inc.*, 564 U.S. 552 (2011), brings the Use Provision "into the purview" of strict scrutiny review. *See* Reply Br. of Appellant 6. *Sorrell*, however, was a commercial speech case in which the Court applied a standard akin to intermediate — not strict — scrutiny. This is not a commercial speech case, and the *Sorrell* standard has no application here.

In order to prevail on an as-applied First Amendment challenge, a plaintiff "must show that the regulations are unconstitutional as applied to their particular speech activity." *See Edwards v. Dist. of Columbia*, 755 F.3d 996, 1001 (D.C. Cir. 2014) (citing *Members of City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789 (1984)). As we have observed, "an as-applied challenge is based on a developed factual record and the application of a statute to a specific person." *See Educ. Media Co. at Va. Tech, Inc. v. Insley*, 731 F.3d 291, 298 n.5 (4th Cir. 2013) (alterations and internal quotation marks omitted). As-applied challenges are fact-specific inquiries because of "the general rule that constitutional adjudication requires a review of the application of a statute to the conduct of the party before the Court." *See Taxpayers for Vincent*, 466 U.S. at 798.

In *Fusaro*, we explained that in applying the *Anderson-Burdick* balancing test, "the court must balance the character and magnitude of the burdens imposed against the extent to which the regulations advance the state's interests in ensuring that order, rather than chaos, is to accompany the democratic processes." *See* 930 F.3d at 258 (quoting *McLaughlin v. N.C. Bd. of Elections*, 65 F.3d 1215, 1221). More specifically, the *Anderson-Burdick* balancing test directs that

> [a] court considering a challenge to a state election law must weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put forward by the State as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights."

*See Burdick,* 504 U.S. at 434 (quoting *Anderson,* 460 U.S. at 789).

*Anderson-Burdick* "ask[s] only that the state articulate[] its asserted interests," which "is not a high bar." *See Libertarian Party of Va. v. Alcorn*, 826 F.3d 708, 719 (4th Cir. 2016) (internal quotation marks omitted). When evaluating the burden, "however slight that burden may appear," the court must be satisfied that the burden is "justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'" *See Crawford v. Marion Cnty. Elec. Bd.*, 553 U.S. 181, 191 (2008) (quoting *Norman v. Reed*, 502 U.S. 279, 288-89 (1992)); *see also Marcellus v. Va. State Bd. of Elections*, 849 F.3d 169, 175 (4th Cir. 2017). The court should consider the "legitimacy and strength" of the State's interests, and "the extent to which those interests make it necessary to burden the plaintiff's rights." *See Anderson*, 460 U.S. at 780. Even if an election regulation "imposes only moderate burdens," it "could well fail the *Anderson*[*-Burdick*] balancing test when the interests that it serves are minor, notwithstanding that the regulation is rational." *See McLaughlin*, 65 F.3d at 1221 n.6. But "when a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the [First Amendment] rights of voters, 'the State's important regulatory interests are generally sufficient to justify the restrictions.'" *See Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 788).

b.

Against this backdrop, we must analyze whether Maryland's interests outweigh the burdens, however slight, imposed on Fusaro's rights. Fusaro asserts that his burdens amount to inconvenience and restrictions placed on his speech activity. He maintains that Maryland's stake in both protecting voter privacy and encouraging voter registration is "legally dubious" and "contradicted by evidence." *See* J.A. 205. Fusaro also insists that it

18

is "laudable" that the State wants "Marylanders to register to vote and maintain their [voter] registration." *See* Reply Br. of Appellant 8. Fusaro claims, however, that those objectives "may be accomplished in any number of ways without censorship." *Id*. at 8-9.

For its part, the State maintains that the Use Provision is both necessary and justified because it is essential to assuring "that those who chose to register to vote will not, by doing so, potentially become inundated with non-electoral-process-related-communications through broad access to Maryland's voter list." *See* J.A. 379. In response to Fusaro's contention that the List is a "uniquely cheap and powerful tool" that is now accessible regardless of an applicant's residency status, *see* Br. of Appellant 10, the State avers that, without the Use Provision, the List would be subject to "easy manipulation" and "exploitation in a way that individual voter registration records . . . available through local board offices are not." *See* Br. of Appellee 25. Further, the State asserts an interest in protecting the health of Maryland's electoral process by safeguarding Maryland registered voters from harassment and abuse, protecting the privacy of personal information, and encouraging both voter registration and participation. *Id.* at 32-33.

In these circumstances, we are persuaded that the State's asserted interests are legitimate. As the district court carefully explained, Maryland's

> desire to promote voter registration while minimizing abuse of the List is furthered by limiting use of the List to electoral purposes. Use of the List is permitted for any electoral purpose, without regard to the message. Conversely, no use of the List is allowed, regardless of the message, if it is unrelated to the electoral process. The State has determined that its citizens should not face an onslaught of communication or solicitations irrelevant to the electoral process as the price of participation in the electoral process. It is both reasoned and credible that Maryland would impose a modest burden in order to advance the interest it has identified.

19

*See Fusaro*, 472 F. Supp. 3d at 259 (citing *Libertarian Party of Va.*, 826 F.3d at 719). We agree with and adopt that reasoned analysis.

Put simply, the burden imposed on Fusaro is modest. As a condition of access, Fusaro must agree to use the List for purposes related to the electoral process. If he does not wish to abide by such an arrangement, a plethora of alternative avenues of recourse remain open to him.[11] Additionally, the burden imposed by the Use Provision is entirely viewpoint-neutral. As we explained in *Fusaro*, "the sole content-based distinction in [the Use Provision]" is "similarly benign" because the limit on use of the List for an electoral purpose "is politically neutral — that is, it does not distinguish between viewpoints, economic classes, or political affiliations." *See* 930 F.3d at 263. The Use Provision does not discriminate against disfavored positions or political groups. Instead, it requires the List be used exclusively for purposes related to the electoral process.

Furthermore, the State's asserted interests for maintaining the Use Provision are not novel, and restricting access on how a state voter list can be utilized is not a unique proposition either. *See, e.g., R.I. Ass'n of Realtors, Inc. v. Whitehouse*, 51 F. Supp. 2d 107, 113 (D.R.I. June 9, 1999) (explaining that State of Rhode Island has legitimate and

---

[11] Although slightly more cumbersome than using § 3-506 to obtain the List, Fusaro can access the same voter registration information by way of § 3-505 of Maryland's Election Law. He can also obtain that voter registration information from third-party sources. In these circumstances, Maryland is "not constitutionally required to eliminate every logistical barrier in administering its regulatory regime for elections." *See Fusaro*, 930 F.3d at 261 (citing *Burdick*, 504 U.S. at 433); *see also Miller v. Brown*, 503 F.3d 360, 368 (4th Cir. 2007) (recognizing that First Amendment associational rights were not burdened where state provided "multiple options" for political parties to vindicate rights).

20

substantial interest in protecting privacy rights of citizens by establishing appropriate limitations on access to or use of personal information citizens are compelled to furnish to government agencies), *aff'd*, 199 F.3d 26 (1st Cir. 1999). As the Second Circuit has recently observed, states have "legitimate interest[s] in encouraging new voter registration" and participation in the electoral process. *See Van Allen v. Cuomo*, 621 F.3d 244, 249 (2d Cir. 2010).

Indeed, the Maryland General Assembly has expressly determined that, in order to protect Maryland registered voters from harassment and abuse, use of the List should be limited to those applicants who certify that they will use it for purposes that are related to the electoral process. We must give due regard to Maryland's determination that its "citizens should not face an onslaught of communication[s] or solicitations irrelevant to the electoral process as the price of participation in the electoral process." *See Fusaro*, 472 F. Supp. 3d at 259. And we are satisfied that the Use Provision imposes a reasonable, nondiscriminatory burden and is justified as a means for enforcing "comprehensive and . . . complex elections codes." *See Anderson*, 460 U.S. at 788.

In sum, we conclude that the Use Provision — as applied to Fusaro — does not run afoul of the Free Speech Clause. When weighed against the State's interests — that is, safeguarding the List, protecting Maryland's election system, and shielding Maryland registered voters from harassment — the burden imposed on Fusaro is modest. We are satisfied that the State has thus met its burden under the *Anderson-Burdick* balancing test.

21

B.

We consider next Fusaro's claim that the Use Provision, as applied to him, is unconstitutionally vague under the First and Fourteenth Amendments. The district court concluded that the vagueness claim fails because Fusaro understands the Use Provision's reach. We agree with that assessment.

1.

The First Amendment protects free speech, and the Fourteenth Amendment makes those protections applicable to the states. *See Edwards*, 178 F.3d at 245 n.10. The Fourteenth Amendment's Due Process Clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law." *See* U.S. Const. amend. XIV. Among the Due Process Clause's protections is that "[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids." *See Lanzetta v. New Jersey,* 306 U.S. 451, 453 (1939).

We recently observed that a state statute is "unconstitutionally vague under the Fourteenth Amendment's Due Process Clause if it 'fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.'" *See Martin v. Lloyd*, 700 F.3d 132, 135 (4th Cir. 2012) (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)); *see also City of Chicago v. Morales*, 527 U.S. 41, 56-57 (1999). As such, "the void for vagueness doctrine addresses at least two connected but discrete due process concerns." *See FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012). The first concern is that regulated

22

parties should know what is required of them so they may act accordingly." *Id.* The second concern is that "precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." *Id.* And "when speech is involved, rigorous adherence to those requirements is necessary to ensure that ambiguity does not chill protected speech." *Id.* at 253-54. But we do not "hold legislators to an unattainable standard when evaluating enactments in the face of vagueness challenges." *See Wag More Dogs Liab. Corp. v. Cozart*, 680 F.3d 359, 371 (4th Cir. 2012).

Consequently, we must focus on whether the government's policy is "set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with." *See Broadrick v. Oklahoma*, 413 U.S. 601, 608 (1973). That inquiry is aided by both "dictionary definitions and old-fashioned common sense." *See Wag More Dogs*, 680 F.3d at 371; *see also United States v. Shrader*, 675 F.3d 300, 310 (4th Cir. 2012) (explaining that a statutory term is "adequately defined by reference to judicial decisions, common law, dictionaries, and the words themselves because they possess a common and generally accepted meaning" (internal quotation marks omitted)).[12]

---

[12] When interpreting a state statute, we have recognized that federal courts should "apply the statutory construction rules applied by the state's highest court." *See Carolina Trucks & Equip., Inc. v. Volvo Trucks of N. Am., Inc.*, 492 F.3d 484, 489 (4th Cir. 2007). The Court of Appeals of Maryland "follows the general principles of statutory interpretation." *See Johnson v. Mayor & City Council of Balt.*, 61 A.3d 33, 38 (Md. 2013). When a term is not defined in a statute, Maryland courts may "turn to a dictionary that is contemporaneous with the drafting and enacting of the language in the statute." *See Lowery v. State*, 61 A.3d 794 (Md. 2013). Although dictionary definitions are not dispositive, they "provide a useful starting point" for determining what statutory terms mean. *See Marriott Emps. Fed. Credit Union v. Motor Vehicle Admin.*, 697 A.2d 455, 448 (Md. 1997) (internal quotation marks omitted).

2.

Here, the district court concluded that the Use Provision is not unconstitutionally vague as applied to Fusaro. The court's opinion emphasized that, as a matter of Maryland statutory interpretation, Fusaro is not "lost at sea." *See Fusaro*, 472 F. Supp. 3d at 266.

We agree. For starters, Fusaro points us to Black's Law Dictionary for guidance, which defines the phrase "electoral process" as: "1. The method by which a person is elected to public office in a democratic society. 2. The taking and counting of votes." *See Electoral Process*, *Black's Law Dictionary* (11th ed. 2019). That definition comports with "old-fashioned common sense" in understanding the Use Provision's contours and it "adequately defines the prohibited conduct" at issue in this litigation. *See Shrader*, 675 F.3d at 310. That is, Fusaro's use of the List to send his letters concerning the unelected State Prosecutor is conduct proscribed by the Use Provision. Additionally, the fact that Maryland's Election Law does not expressly define "electoral process" is of no moment. We do not find impermissible vagueness "simply because [the statute] does not include the most elaborate or the most specific definitions possible." *See Shrader*, 675 F.3d at 310.[13]

Nevertheless, Fusaro contends that the Use Provision contains "nebulous term[s] that may be only defined at a later date by a bureaucratic fiat." *See* Br. of Appellant 17. The problem for Fusaro is that, even with the benefit of discovery in the remand

---

[13] Fusaro further asserts that the Use Provision is impermissibly vague because courts and Maryland enforcement agencies will be forced to provide some interpretation about what the phrase "related to the electoral process" means in different situations. But "fair notice doesn't require certainty about every hypothetical situation." *See Capital Associated Indus. v. Stein*, 922 F.3d 198, 211 (4th Cir. 2019).

proceedings, he has not demonstrated any confusion as to the Use Provision's reach concerning his letters. In that regard, we agree with the district court that "Fusaro's suit is based on the uncontested premise that his . . . letters criticizing an appointed official do not fall within the ambit of 'electoral process.'" *See Fusaro*, 472 F. Supp. 3d at 266. Although Fusaro says that the Use Provision is unconstitutionally vague, he admits that whatever "related to the electoral process" means, that phrase does not extend to the letters he wishes to circulate concerning the State Prosecutor. The Complaint itself acknowledged that the letters Fusaro seeks to send "literally cannot . . . be reasonably interpreted to relate to elections or to the electoral process." *See* Complaint ¶ 35.

Nor was this an isolated admission. The Complaint was replete with similar statements, all of which indicate that Fusaro understands the Use Provision's reach relative to his letters concerning the unelected State Prosecutor. *See* Complaint ¶ 26 (acknowledging that the letter Fusaro intends to send is "not related to the electoral process"); *id.* ¶ 20 ("Davitt is not an elected official, the mailer does not advocate for the election or defeat of a candidate or ballot measure . . . or mention a candidate for office or ballot measure."); *id.* ¶ 22 ("In the future, Fusaro would send other letters and non-commercial materials that relate to issues of local and national political importance, but not the electoral process."); *id.* ¶ 26 ("Fusaro will refrain from sending his letter and many future communications, because they are not related to the electoral process . . . .").[14]

---

[14] In his opening appellate brief, Fusaro seeks to take back those admissions by maintaining that we should "recognize and consider what the court below did not: that [his] initial interpretation of 'electoral process' was wrong." *See* Br. of Appellant 10. That (Continued)

At bottom, the allegations of the Complaint have all but conceded that, as applied to Fusaro, the phrase "related to the electoral process" is not unconstitutionally vague. *See Imaginary Images, Inc. v. Evans*, 612 F.3d 736, 749 (4th Cir. 2010) (provision not unconstitutionally vague if intelligible to "the ordinary person exercising ordinary common sense"). The Use Provision's reach is intelligible to Fusaro, and thus his as-applied vagueness challenge is without merit.[15]

C.

Lastly, we assess Fusaro's facial challenges to the Use Provision, on both free speech and vagueness grounds. "To succeed in a facial constitutional challenge, a movant 'must establish that no set of circumstances exists under which [an act] would be valid.'" *See United States v. Hosford*, 843 F.3d 161, 165 (4th Cir. 2016) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). That is a particularly demanding standard and is the "most difficult challenge to mount successfully." *See Salerno*, 481 U.S. at 745. The

---

effort is unavailing because the Complaint acknowledges that Fusaro's letters — both of which concern an *unelected* official (that is, the State Prosecutor) — do not, and "literally cannot," relate to elections or the electoral process. *See* Complaint ¶ 35.

[15] Nor do we see that the Use Provision encourages "seriously discriminatory enforcement" that would authorize Fusaro's as-applied vagueness claim. *See Martin*, 700 F.3d at 135. As a practical matter, prior enforcement of the challenged statute is "[t]he most obvious way to demonstrate a credible threat of enforcement in the future." *See Abbott v. Pastides*, 900 F.3d 160, 176 (4th Cir. 2018) (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014)). The record in this case demonstrates that there has been no history of the State Prosecutor enforcing the Use Provision. As the State Prosecutor explained, that office has never "'determine[d] whether a use of a registered voter list is 'related to the electoral process' in connection with any prosecution [or complaint to the State Board] of any person" for violating § 3-506(c). *See* J.A. 296.

Supreme Court generally disfavors facial challenges because they "often rest on speculation," can lead courts unnecessarily to anticipate constitutional questions or formulate broad constitutional rules, and may prevent governmental officers from implementing laws "in a manner consistent with the Constitution." *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450-51 (2008).

We first assess Fusaro's claim that the Use Provision facially contravenes the Free Speech Clause, followed by his claim that the phrase "related to the electoral process" is facially vague. We agree with the district court that those facial challenges are meritless.

### 1.

First, Fusaro's facial challenge to the Use Provision under the Free Speech Clause necessarily fails. As the Second and Third Circuits have recognized, "if a litigant loses an as-applied challenge because the court rules as a matter of law that the statute or ordinance was constitutionally applied to [him], it follows *a fortiori* that the law is not unconstitutional in all applications." *See Knick v. Twp. of Scott*, 862 F.3d 310, 321 (3d Cir. 2017) (citing *Dickerson v. Napolitano*, 604 F.3d 732, 741 (2d Cir. 2010)). Here, we have already concluded that, as applied, the Use Provision does not violate Fusaro's rights under the Free Speech Clause. As such, Fusaro is unable to establish that "no set of circumstances exist under which [the Use Provision] would be valid." *See Hosford*, 843 F.3d at 165.

### 2.

Second, Fusaro's facial vagueness challenge to the Use Provision also fails. A party may pursue a facial vagueness challenge "to vindicate not only his own rights, but those of others who may also be adversely impacted by the statute in question." *See Morales*, 527

27

U.S. at 55-56 n.22. Crucially, a "plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 19-20 (2010) (quoting *Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982)).

Here, the district court concluded that, under the Supreme Court's *Hoffman Estates* and *Holder* decisions, Fusaro cannot complain of the Use Provision's facial vagueness because his conduct is "clearly proscribed." *See Fusaro*, 472 F. Supp. 3d at 267. Although *Holder* involved a vagueness challenge under the Fifth Amendment's Due Process Clause, *Expressions Hair Design v. Schneiderman* recognized that its reasoning applies to a facial vagueness challenge pursued under the Fourteenth Amendment. *See* 137 S. Ct. 1144, 1151-52 (2017) (citing *Holder*, 561 U.S. at 20); *see also Cahaly v. Larosa*, 796 F.3d 399, 407 (4th Cir. 2015) (ruling that there could be no facial vagueness challenge to a state anti-robocall statute for political calls when conduct was clearly proscribed). Because we have already concluded that Fusaro's conduct is clearly proscribed — that is, it is clear the letters he wishes to send concerning the unelected State Prosecutor are not "related to the electoral process" and not permissible uses of the List — we are obliged to adhere to the rule enunciated by the Supreme Court in *Expressions Hair Design*. We therefore reject Fusaro's facial vagueness challenge to the Use Provision.

28

IV.

Pursuant to the foregoing, we are satisfied to affirm the judgment of the district court.

*AFFIRMED*